### SAMUEL FUDIM *vs.* BENJAMIN KANE *et al.*

#### FEBRUARY 28, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)   Removal of Default.*

Removal of default is within the judicial discretion of the court and its action is reversible only for abuse of discretion.

*(2)   Default.   Damages.*

A default admits liability only.   The amount of damages is subject to proof.

*(3)   Mortgage Sale.   Surplus.*

A surplus on foreclosure sale is held to the use of the owner of the equity of redemption and it can not be used without such owner's consent to discharge a prior mortgage.

*(4)   Mortgage Sale.   Surplus.   Actions.*

A surplus on foreclosure sale may be recovered in an action of assumpsit.

*(5)   Mortgagee's Deed.   Mortgage Sale.   Recitals.*

The recitals in a mortgagee's deed are *prima facie* proof of the amount received at foreclosure sale, but neither the recitals nor the affidavit in connection with them are conclusive.

*(6)   Mortgage Sale.   Purchase by Junior Encumbrancer.*

A junior encumbrancer who purchases at foreclosure sale, is estopped as against the mortgagor to claim an understanding that he was purchasing free of encumbrances.

*(7) Mortgage Sale. Surplus.*

Statement by prior encumbrancer at sale under junior encumbrance that he wanted his money was merely notice that any purchaser might be called upon at once to protect his purchase and gave no right to the purchaser to withhold the amount of the first mortgage from the bid price.

*(8) Mortgage Sale. Sale on Credit.*

A mortgagee cannot sell on credit and bind the mortgagor, but if he sells on credit he becomes liable to the mortgagor for the surplus as if the sale had been for cash.

ASSUMPSIT. Heard on exceptions of defendants and overruled.

BARROWS, J. This was an action of assumpsit by a mortgagor to recover a surplus alleged to be in the hands of the assignees of the mortgagee after a foreclosure sale.

Two mortgages existed on plaintiff's property, the first for $6,000 and the second for $12,000. The latter was held by defendants. Interest being in default thereon, acting under the power of sale in the mortgage they advertised a sale of the property. The sale as advertised was actually made with notice that it was subject to the first mortgage. At the sale were numerous bidders, one of whom bid $14,500. Among those present was the holder. of the first mortgage who asserted that his interest was in default and said his mortgage would have to be paid. No representations were made by any one in authority that the sale was to be free from all encumbrances nor had defendants authority so to sell. The utmost that the facts can be said to show is that defendants supposed the purchaser could deduct the amount of the first mortgage from his bid.

To one of the holders of the mortgage, Kane, as was permitted by the express terms of the power of sale, the property was knocked down for $15,000 and he received from all five defendants a mortgagees' deed reciting the sale to have been subject to the first mortgage and acknowledging the receipt of said bid. No steps have been taken to attack the mortgage sale for mistake.

When the case was reached for trial in the Superior Court defendants were defaulted for nonappearance. False statements in connection with Kane's alleged illness were admittedly made but there is no evidence that defendants' counsel had knowledge of them.

Subsequently the Superior Court refused to remove the default and assessed damages after taking testimony. The case is here on exception (1) to the action of the Superior Court refusing to remove the default and (2) to the amount of damages assessed.

(1) Removal of default was within the judicial discretion of the Superior Court. Its action is reversible only for abuse of discretion. We agree with it that the circumstances of defendants' absence from the trial were such as to indicate that the one defendant Kane who acted as spokesman for the other four had no intention of being present at the trial. This view was fortified by his subsequent unexplained failure to appear at the hearings on removal of default and assessment of damages when his presence was desirable and continuances for the purpose of securing the same were granted at his own counsel's request. There was no abuse of discretion in the Superior Court's refusal to remove the default.

(2) The same question which defendants desired to raise by way of defence, if the default had been removed, is brought up on their exceptions to the amount of damages assessed. The claim is that plaintiff after default is entitled to nominal damages only because the purchaser retained from the $15,000 acknowledged purchase price $6,000 with which to pay the first mortgage. The alleged result was that the foreclosure sale left the mortgagees with a loss of $3,000 rather than with a surplus. They assert that unless the $15,000 actually came into their hands, plaintiff, though perhaps entitled to relief in some other form of action, is not entitled to recover for money had and received.

The default admits liability only. The amount of damages is subject to proof. *Hicks* v. *Wilbur*, 38 R. I. 268, at

274. A surplus on foreclosure sale is held to the use of the owner of the equity of redemption. Jones on Mortg. 7th ed. sec. 1698, *Gilson* v. *Nesson*, 208 Mass. 368. It can not be used without such owner's consent to discharge a prior mortgage. *Bobbitt* v. *Blackwell*, 120 N. C. 253. It may be recovered in an action of assumpsit. *Reynolds* v. *Hennessy*, 15 R. I. 215; *Schiavino* v. *Salzillo*, 45 R. I. 203. The right to a surplus accrues "forthwith or very shortly after the sale without any previous demand" and the recitals in the mortgagees' deed are *prima facie* proof of the amount received at foreclosure sale. *Reynolds* v. *Hennessy*, *supra*, at 219. These recitals are not conclusive, Jones on Mortg. sec. 1698, *Hedley* v. *Briggs*, 2 R. I. 489, nor is defendant's affidavit in connection with them conclusive. *Gilson* v. *Nesson*, *supra*. In the case at bar the recital of the deed though fortified by one affidavit of defendant Kane that the amount realized was $15,000, is by Kane's second affidavit in explanation of the use made of said purchase price turned into an alleged net realization by mortgagees of $9,000 less expense.

Accepting Kane's affidavit that the mortgagees actually divided up only $9,000 less expenses, is it true that they did not receive $15,000 or its equivalent so as to be liable in assumpsit?

No contention can be made that Kane did not buy subject to the first mortgage. *Brunette* v. *Myette*, 40 R. I. 546. Moreover, a junior mortgagee who purchases is estopped as against the mortgagor to claim an understanding that he was purchasing free and clear of encumbrances. *Feuer* v. *Capilowich*, 242 Mass. 560. The same rule is applicable when the purchaser is one of several junior mortgagees. The presence of the first mortgagee at the sale was unnecessary, *Brunette* v. *Myette*, *supra*, and his statement that his mortgage was in default and that he wanted his money was merely notice that any purchaser might be called upon at once to protect his purchase. It gave no right to the purchaser to withhold the amount of the first mortgage from

the bid price at the foreclosure sale. Kane, therefore, became liable to the mortgagees for the full bid price. 41 C. J. 985, sec. 1438. *Upham* v. *Hamill*, 11 R. I. 565 (execution sale). There is no evidence of Kane's inability to pay this price. Instead he states that he paid $9,000 and retained $6,000 to cover the first mortgage. If he had voluntarily paid the first mortgage the mortgagees would still be liable to account for the price bid. *Brunette* v. *Myette, supra.* The power of sale did not give the mortgagees authority to permit retention of $6,000. Allowing it to be done was the giving by the mortgagees of unauthorized credit of that amount to the purchaser. The power of sale was silent as to terms upon which the sale could be made. In such event the sale must be made for cash. *Olcott* v. *Bynum*, 17 Wall. 44. The mortgagees could not sell on credit to one of their own number or anyone else and bind the mortgagor thereby. When the mortgagees without authority chose to give credit they became liable to the mortgagor for the surplus as if the sale had been for money. In *Cassell* v. *Ross*, 33 Ill. 244, the court says, at 258, "As to that portion (surplus) of the purchase money he (the mortgagee) could not release the purchaser nor could it be discharged in any other mode or in anything else than the payment of money." In *Bailey* v. *Aetna Ins. Co.*, 10 Allen, 286, the court says, 288-9, "If the mortgagee elected to give credit for payment as between the purchaser and himself he might do so and the mortgagor or his assignee entitled to the surplus would have the right to demand cash for the same."

The mortgagees' obligation therefore was to accept the highest *bona fide* bid and the legal rights in the proceeds of the foreclosure sale were settled as equivalent to a cash transaction at the time of the delivery of the mortgagees' deed. The mortgagor was then entitled to a surplus because the purchase price was admittedly $15,000. He had no interest in the value of the credit. We think the Superior Court correctly held that the mortgagees received for the

property $15,000.   There was no error in the assessment of damages by the trial justice and no question is raised about the accuracy of computation of the amount due.

The exceptions of the defendants are overruled and the case is remitted to the Superior Court with direction to enter judgment on the decision.

*Wilson, Churchill & Curtis,* for plaintiff.

*Robinson & Robinson, McGovern & Slattery,* for defendant.