NATHAN WARTELL *vs.* DAVID NOVOGRAD.

APRIL 25, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. This case after a second jury trial is before us on defendant's exceptions (1) to refusal to direct a verdict for defendant, (2) to alleged errors in rejecting certain evidence offered by defendant and (3) to the direction of a verdict for plaintiff for $7,161.36.

It was formerly here on a state of facts showing plaintiff to be a third mortgagee and defendant to have foreclosed on a fifth or sixth. The priority of plaintiff's mortgage appeared from its recitals. Then we said that defendant might be liable in assumpsit if he agreed to use money in his possession belonging to Terkel for the specific purpose of paying Terkel's debt to plaintiff. We said the fact that the action followed a mortgage foreclosure by defendant was only incidental. We spoke of the action as one contractual in form of procedure but equitable in its nature. *Wartell* v. *Novograd*, 48 R. I. 296 (137 Atl. 776). Because

of erroneous direction of a verdict for defendant on the ground that an action at law would not lie we ordered a new trial, declining to grant plaintiff's motion for direction of a verdict because his testimony was somewhat hazy and inconsistent and defendant did not testify.

At the present trial it appeared that defendant was in possession of a surplus after foreclosing a second mortgage of which he was assignee. Plaintiff was the holder of a fifth mortgage. We do not think that this alters the principle controlling the former decision as to plaintiff's right to sue at law. Plaintiff is not suing in the capacity of a subsequent mortgagee seeking an accounting. He is basing his action on defendant's obligation created by his alleged agreement to use Terkel's money to pay plaintiff. There is no merit to the contention that plaintiff in order to bring this suit at law should have joined the several prior mortgagees. They were not joint promisees with plaintiff of defendant's implied promise to pay the plaintiff's note. As stated in *Jerome* v. *McCarter*, 94 U. S. 734, at 736: "It can never be indispensable to make defendants of those against whom nothing is alleged, and from whom no relief is asked." *Clapp* v. *Pawtucket Institution for Savings*, 15 R. I. 489, to which defendant refers, was an action of assumpsit by one of several joint mortgagor copartners to recover a portion of the surplus from the mortgagee who had foreclosed. The court held that such partner alone could not recover his share of the surplus because the power of sale created an obligation on the mortgagee to pay the surplus to all parties jointly and not to pay it pro rata to the individual partners. The language of the court has no application to an action at law by one of a series of successive mortgagees against a predecessor. Such mortgagees are not tenants in common of the equity of redemption. Their rights are not collective. They are distinctly several and separate. This is shown in proceedings to foreclose by a junior mortgagee where senior mortgagees are not necessary parties because nothing of theirs is sold. *Jerome* v. *McCarter, supra. Wartell* v. *Novograd, supra.*

194

Where successive mortgages are given, the duty rests upon a senior mortgagee to account to his successors seriatim for the surplus above the mortgage indebtedness. Such accounting may be in equity, either at the instance of the senior or junior mortgagee or the owner of the equity of redemption and all parties should be joined in such proceeding, where their rights can be adjusted in a single action. *DeWolf* v. *Murphy*, 11 R. I. 630. When, however, the surplus in the mortgagee's hands after foreclosure sale is liquidated and held to the use of one owner of the equity of redemption it is established that assumpsit will lie; that resort need not be had to equity. *Reynolds* v. *Hennessey*, 15 R. I. 215; *Fudim* v. *Kane*, 48 R. I. 155 (136 Atl. 306). A junior mortgagee is entitled to an accounting like the owner of the equity of redemption. If there be several successive junior mortgagees their liens attach to the surplus in the same order as they originally did to the land. *Markey* v. *Langley*, 92 U. S. 142. If the evidence shows that the senior mortgagee after a foreclosure sale admits that he has in his hands an amount sufficient to pay his immediate junior's liquidated claim, no reason is apparent why the latter should not be permitted to recover at law as is the owner of the equity of redemption and it has been so held. *Webster* v. *Singley*, 53 Ala. 208. Application of the same principle is made in *Knowles* v. *Sullivan*, 182 Mass. 318 (suit at law by holder of mechanic's lien against senior mortgagee). There is no reason why the senior mortgagee after foreclosure may not admit possession of specific funds to pay several junior mortgagees and either undertake to settle with them or to promise each one severally to pay his claim, without resort to a court of equity. Plaintiff's claim here was that defendant admitted possession of an amount sufficient to pay plaintiff's note and that he agreed to make such payment as a part of his efforts to assist his sister, Mrs. Terkel. If plaintiff established these facts, he brought himself within the principle of *Wartell* v. *Novograd*, *supra*. Defendant did not need to admit possession of

plaintiff's money but if he did so he could not object when plaintiff acted upon the admission. As senior mortgagee defendant could have protected himself by bringing a bill in equity against all subsequent mortgagees for determination of their respective rights. *East Greenwich Inst. for Savings* v. *Shippee*, 20 R. I. 650.

Before considering the evidence admitted it may be well to notice the rulings rejecting defendant's offer to show the amounts of the intervening mortgages, the fact of an assignment by Terkel in 1915 and the time when defendant first learned of it. As to the assignment, whatever its effect, Lena Terkel had become the sole owner of the equity of redemption prior to the trial of this case. Her attorney's statement that she would so swear was accepted in lieu of her presence. In this action at law in which intervening mortgagees were not interested or parties the amount of the intervening mortgages, their validity and the unpaid balances if any were not matters to be litigated. The trial court correctly stated the case when it said that such matters could not be injected into this action at law where the only question was "whether Novograd made himself a trustee for Wartell" of the amount due on the latter's mortgage note. The rulings on evidence were correct.

Did the evidence plainly establish defendant's trusteeship of $7,161.36? On defendant's exception to a directed verdict the evidence must be viewed in the light most favorable to him. *Wartell* v. *Novograd, supra*. It was established that the Terkels became financially involved and procured Novograd, Mrs. Terkel's brother, to purchase the second mortgage and take an assignment thereof on September 21, 1925. Under it, pursuant to legal advice, he advertised foreclosure proceedings in October, 1925. As a result of the sale thereunder approximately $35,500 came into defendant's hands available to pay expenses and the second, third, fourth and fifth mortgages. Defendant's arrangement with Mrs. Terkel, whose husband had died, was to secure as favorable settlements as possible with the various

mortgagees. The testimony of one witness was that Novograd said he was investing ten to twelve thousand dollars for his sister and it might be inferred that this money came from the surplus accruing to Mrs. Terkel after payment of the mortgages. Novograd denied making such a statement. He did not deny the possession of sufficient of Mrs. Terkel's money to pay the Wartell indebtedness in full. Plaintiff testified and no one denied that the principal and interest due upon his $6,000 mortgage note at the time of foreclosure was in excess of $6,300. The only difference between plaintiff's and defendant's testimony here is that Novograd claims that Wartell in order to help out Mrs. Terkel agreed to remit all overdue interest and accept $6,000 in full settlement whereas Wartell said that he agreed to accept $6,300. Novograd pursuant to the arrangement to which he testified sent to his attorney a cashier's check for $6,000 payable to plaintiff which the attorney tendered to Wartell and which the latter refused demanding $6,300 whereupon Wartell was told by the attorney to "try and get it."

Defendant contended that even though it be found that he admitted possession of $6,000, there was a question for the jury, whether he had made himself trustee for more than $6,000. The court held that the amount of the indebtedness to Wartell was simply a matter of computation and that no consideration existed for an alleged agreement to accept $6,000; that there was no question for the jury and directed a verdict for plaintiff for $7,161.36, which was composed of $6,000 plus $382.61, being 8% interest to the date of the sale, October 22, 1925, and plus $778.75 interest to date of trial at 6%.

Novograd's tender of the check for $6,000 was properly held by the trial court to be an admission of possession of that amount and not merely an offer to compromise. There was nothing to compromise. No dispute existed as to the amount due. Defendant simply was attempting to get plaintiff to accept in full settlement less than was due him.

However, defendant's recognition that $6,382.61 was due and his attempt to get plaintiff to take $6,000 in settlement does not seem to us to establish plaintiff's case with such certainty as to warrant a directed verdict. It could furnish the basis for an inference of possession by defendant of $6,382.61 immediately following the sale, but whether such inference should be made we think was a question for the jury. Unless defendant's possession of $6,382.61 was indisputably shown a verdict could not have been directed based upon an implied agreement to pay that amount. Wartell's strongest testimony is that Novograd told him after receiving the proceeds of the sale and knowing the amount of Wartell's claim, "Your money is all ready. You can go up to Mr. Green and get your money." Wartell also says that at the time of trial after Novograd had been told that the amount of indebtedness was then approximately $6,900, Novograd said "Green has got it—you should have had it long ago." These statements were denied by Novograd. Novograd's failure to deny that he had sufficient money to pay the Wartell note is suggestive, as stated by the trial court, but hardly established with that clarity required for the direction of a verdict, that defendant had $6,382.61 of Terkel's money to pay the Wartell note. In the absence of an admission by defendant that he had this amount and in view of the conflicting testimony of Israel and Novograd, we have difficulty in finding that the court was warranted in directing a verdict for $7,161.36. It clearly would have been warranted in directing a verdict for $6,000 admittedly in Novograd's possession after foreclosure in October, 1925. To this it properly could have added interest to the date of the trial, approximately two years at 6%, amounting to $720. By so much as the directed verdict exceeded $6,720 we think the court erred.

All of defendant's exceptions other than the fifteenth are overruled. The fifteenth is sustained. and a new trial is granted unless the plaintiff within fifteen days after the filing of this opinion shall file with the clerk of the Superior

Court a remittitur of all of the verdict in excess of $6,720. If such remittitur is filed the Superior Court is directed to enter judgment on the verdict as reduced by the remittitur.

*Cooney & Cooney,* for plaintiff.

*Greene, Kennedy & Greene,* for defendant.