**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**Kenneth OLSEN, Defendant-Appellee.**

**No. 74–1283.**

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1975.

Decided May 15, 1975.

Michael Kimmel, Atty., Dept. of Justice, Civil Div., Appellate Section, with whom Carla A. Hills, Asst. Atty. Gen., New York City, James N. Gabriel, U. S. Atty., Boston, Mass., and Morton Hollander, Atty., Dept. of Justice, Civil Div., Appellate Section, Washington, D. C., were on brief, for plaintiff-appellant.

Harold E. Magnuson, with whom Martin, Magnuson, McCarthy & Kenney,

Boston, Mass., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant, the United States, commenced this action in the district court, seeking to collect $15,529.70 plus accrued interest allegedly due from appellee as guarantor of a note held by the Small Business Administration (SBA). 28 U.S.C. § 1345; 15 U.S.C. § 634(b)(1). On cross motions for summary judgment the district court dismissed the complaint, and the government appeals.

On November 29, 1965, Flat Rock Skiway, Inc. obtained two SBA participation loans through Claremont National Bank to enable it to set up and operate a ski resort. Flat Rock Skiway executed two notes in exchange for the $91,000 which it received. The First Note was for $62,000 and was made payable to the Small Business Administration. This note was guaranteed by appellee and several others, with the guaranty appearing on the bottom of the note in the following form: "The undersigned hereby guarantee payment of the above Note, waiving demand and notice of protest." The First Note was secured by a First Mortgage on certain real property in Claremont, New Hampshire.[1] The Second Note, for $29,000, was payable to the Claremont National Bank or its assigns and, on October 23, 1969, was assigned to the SBA. Appellee executed the standard SBA guaranty form with regard to this note, and the obligation was secured by a Second Mortgage on the property subject to the First Mortgage. This Second Mortgage also included an additional small parcel of land. Each note provided for acceleration upon default and each mortgagee was authorized to sell the property if the mortgagor was in default.

After Flat Rock Skiway, Inc. defaulted on both notes and Claremont National Bank assigned the Second Note to the SBA, the SBA decided to exercise the power of sale contained in the Second Mortgage. A notice of foreclosure sale was published in which the property subject to sale was described as in the Second Mortgage, including the statement that the property was subject to a First Mortgage from Flat Rock Skiway to the SBA. The notice stated that the land would be sold at public auction on March 25, 1970, that a down payment of $4,000 would be required, and that other terms would be announced at the time of sale.

At the sale, it was announced that the SBA would discharge the First Mortgage and that prospective purchasers should bid as if there were no mortgage of record. Appellee, along with an attorney, attended the sale. The highest bid received was $75,000, and after applying $2,459.55 of this to the expenses of sale and $49,239.69 to extinguish the First Note, the SBA applied the remaining $23,300.76 to the Second Note. This allocation left a balance of $15,529.70 due on the Second Note, and that is the amount, plus interest, sought in this action.

While there is no question but that appellee, prior to foreclosure, was liable as guarantor in the full amount of the indebtedness, his basic contention is that he was relieved of any obligation to pay the unrecovered sum because of alleged defects in the mortgage sale. It is conceded that both of the notes were in default, and that under each the SBA could properly exercise a power of sale, and it appears that appellee would have had no objection if the SBA had either foreclosed on both mortgages or foreclosed on the First Mortgage, applied the surplus to the Second Note, and then attempted to collect any remaining deficiency from appellee. Appellee argues,

---

1. Appellee objected below to the fact that the property was described at the time of the foreclosure sale as consisting of 180 acres, asserting that it was said to be 200 acres at the time of purchase by Flat Rock Skiway. Without determining which figure was correct, the district court found the acreage count to be immaterial. That finding is amply supported by the record and is unchallenged by appellee on this appeal.

however, that the "combined actions of SBA of a foreclosure by sale under the second mortgage and a subsequent discharge of the first mortgage do not constitute a legal foreclosure of the first mortgage and should not be treated in equity or effect as a foreclosure for the entire sum of the unpaid balances of both mortgages." Though windfall this may be, appellee in effect urges, it is a lawful one. The district court adopted this position in substance.[2]

■ On the threshold question of whether federal or state law defines the rights of parties to an SBA loan and guaranty transaction, each party suggests that federal law is controlling. This appears to be the case. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); First National Bank, Henrietta v. SBA, 429 F.2d 280 (5th Cir. 1970); United States v. Hext, 444 F.2d 804 (5th Cir. 1971). We do not tarry on the issue, however, nor need we reach the question whether this is a situation in which a state's law should be adopted as a part of the federal common law. As will appear more fully in the discussion to follow, we have found no body of law, either federal or state, which squarely confronts the issue to be decided here. Thus, while open to the analogies which may be drawn from the previously-decided cases, we regard the question presented as one requiring that we traverse uncharted ground.

■ Appellee has referred the court to the line of cases, with which there can be no dispute, establishing that one foreclosing on a junior mortgage has no power to discharge a senior mortgage. *See, e. g.,* Brooks v. Bennett, 277 Mass. 8, 16, 177 N.E. 685 (1931); Antonellis v. Weinstein, 258 Mass. 323, 154 N.E. 850 (1927). This restriction on the authority of junior mortgagees is a necessary incident of a senior mortgage, since if it were otherwise a mortgagee who expected to be able to look to the land for satisfaction of the debt would find himself with only the right to proceed personally against a junior lienor who has sold the property, and has withheld the amounts of senior mortgages. The security offered by a mortgage would be largely illusory if the debt could so easily become the unsecured obligation of a junior mortgagee, a party with whom the senior creditor has never even chosen to deal. This issue of the power vested in a junior mortgagee, while necessarily of major concern to the courts deciding most of the cases cited by appellee, is not relevant to the present controversy. The SBA held both of the mortgages, and thus the policy which prevents a foreclosing junior mortgagee from discharging a senior mortgage has no application.

■ Since it is clear that in this case the SBA did have the power to discharge the First Mortgage which it held, the question which remains is whether it properly applied the proceeds of sale to that obligation when it foreclosed on the Second Mortgage. When the sale was conducted pursuant to the Second Mortgage, the SBA was selling not only its interest in the property, but also the interests of those holding subsequent liens (if any) and the "equity of redemption", the mortgagor's interest. The sale cut off all rights that these parties had against the property, and substituted corresponding claims against the proceeds of the sale. Wiggin v. Heywood, 118 Mass. 514 (1875); Pioneer Credit Corp. v. Bloomberg, 323 F.2d 992 (1st Cir. 1963).

---

2. The court ruled that since it was the Second Mortgage which was foreclosed upon, the proceeds of sale must first be applied to the Second Note. That note was therefore extinguished, and the defendant was entitled to summary judgment with regard to the SBA's claim against him as guarantor of the note.

   The district court held that the SBA had properly applied the excess proceeds to the First Note which it also held, but ruled that the SBA could not collect any remaining indebtedness thereon because its discharge of the First Mortgage had deprived the defendant of his right to subrogation against the real estate. The court relied upon Spaulding v. Quincy Trust Co., 313 Mass. 752, 49 N.E.2d 251 (1943), discussed *infra.*

The seldom-varying fact pattern presented by the cases cited by appellee is easily described: A junior mortgagee has sold the property, only to be sued by the mortgagor or a still-more-junior mortgagee who claims that there is a surplus which should be paid over. The mortgagee who conducted the sale counters with the argument that there is no surplus because the sale price included the amounts necessary to discharge the mortgages senior to the one which was foreclosed. The courts' disposition of these cases—holding that the selling mortgagee must account for the entire sale price, without making deductions for senior mortgages—demonstrates nothing more than that ordinarily the junior mortgagee cannot discharge the senior obligation. Antonellis v. Weinstein, *supra*, is typical. The holder of a third mortgage, acting through an agent, advertised the property for sale subject to the two prior mortgages and then purchased the property at the sale for a sum in excess of his own mortgage. The Massachusetts Supreme Judicial Court held that the trial judge properly refused to accept evidence that the selling mortgagee intended to include the amounts of the first and second mortgages in his bid; the judgment which had been entered for the subsequent claimants was affirmed. The court noted that the sale "could not legally include prior mortgages; to hold otherwise would not only be contrary to our decisions, but would be in violation of the statute" under which the sale was held. 258 Mass. at 326, 154 N.E. at 851. The cited cases of O'Brien v. Slefkin, 88 R.I. 264, 147 A.2d 183 (1959); Fudim v. Kane, 48 R.I. 155, 136 A. 306 (1927); Schmidt & Wilson, Inc. v. Carneal, 164 Va. 412, 180 S.E. 325 (1935); and Seward v. New York Life Insurance Co., 154 Va. 154, 152 S.E. 346 (1930), are to the same effect. See also Thomas v. Haines, 285 Mass. 90, 188 N.E. 621 (1933).

Only in Spaulding v. Quincy Trust Co., 313 Mass. 752, 49 N.E.2d 251 (1943), does it appear that the senior mortgages and the mortgage which was foreclosed were held by the same party. The defendant bank held three mortgages of $5,000 each, and foreclosed on a fourth mortgage which was for $2,000. At the sale, the bank itself was the buyer for $5,000. The sale was advertised as being subject to the three prior mortgages and the court found that the deed of sale conveyed the property subject to them. Plaintiff, assignee of the mortgagor's devisees, sued to recover the surplus, and the bank claimed to have applied the funds to the obligations due on the three earlier mortgage notes. The court, in ruling for the plaintiff, held that the sale of the property which was subject to the three mortgages required that the bank look first to the property for satisfaction of the debts, and only afterward to the mortgagor. Subsequent to purchasing the property at its own mortgage sale, however, the bank had resold the land free and clear of the mortgages. This deprived the mortgagor of the protection of possible subrogation against the land, and under the circumstances the court refused to allow the defendant to set-off the surplus against the prior mortgage debts.

This policy of retaining for the mortgagor his right to be subrogated against the land, the rationale for *Spaulding*, makes eminent sense when a sale by a mortgagee is made subject to senior mortgages. The vice at which the *Spaulding* rule is aimed may be illustrated thusly. The four mortgages which secured the obligations to the bank totalled $17,000. If a sale of the property free and clear of all mortgages brought $17,000, the bank would be made whole and the mortgagor freed of obligation. If the sale were to bring $20,000, the bank would be made whole, with the $3,000 surplus going to the mortgagor. To the extent that a free and clear sale would bring more, the mortgagor would be the sole beneficiary. The bank, by paying at the sale $3,000 beyond the amount due on its fourth mortgage, and then by reselling the land free and clear, deprived the mortgagor of the chance to benefit from a more advantageous sale

or to buy in himself and reap the advantage if the value of the land warranted. *See* Union Institution for Savings v. Hill, 139 Mass. 47, 29 N.E. 219 (1885). There was never any test of what a willing buyer would pay for the full title, since the sale was made subject to the three prior mortgages.

In the case at bar, however, the clearly understood terms of the sale were that it was being conducted free of both mortgages,[3] and since the protection of a public sale free from all mortgages is the equivalent of a right of subrogation, *Spaulding* is inapplicable.[4]

Appellee suggests that he might have been prejudiced in another way—not by the actual terms of the sale but by lack of advance public knowledge of those terms. He asserts that since the legal notice of foreclosure described the property to be sold as subject to a First Mortgage, the sale could not have been attractive to "purchasers ready to buy a complete ownership". The facts are, however, that such purchasers obviously were attracted, the auctioneer's advertisements in the Boston Globe and New England Real Estate Journal made no mention of prior mortgages,[5] and all notices advised that other terms would be announced at sale. Although appellee's answer to the government's complaint stated upon information and belief that the market value of the real estate "was substantially in excess of Seventy-five Thousand Dollars", no genuine issue of material fact has been made out, appellee having never advanced beyond his naked pleading as required by Fed.R. Civ.P. 56(c)

While we by no means endorse the sloppy manner in which this sale was carried out by the SBA, we have found no misstep which should prevent appellant from recovering the balance due it. Mortgage law is assuredly a technical field, and we might well have to accept such a result if there were precedents supporting appellee's position. There are none, however, and we are free to take the sensible approach. Appellee was in no way prejudiced by the procedures followed by the SBA at the sale, and since there are no issues of material fact which remain to be resolved,[6] we remand to the district court for entry of summary judgment for appellant.

Reversed and remanded for proceedings consistent herewith. No costs.

---

**3.** It makes no difference that the foreclosure deed delivered to the purchaser stated that the conveyance was subject to prior mortgages. It was announced prior to the sale that the SBA would discharge the First Mortgage and that bids should reflect that fact, and the mortgage was in fact discharged as contemplated. Appellee attended the sale, and at no time has he suggested that he or anyone else present at the sale was under the misapprehension that the sale was being made subject to the First Mortgage.

**4.** The case at hand much more closely resembles Morton v. Hall, 118 Mass. 511 (1875). Plaintiffs, who had foreclosed on a mortgage, sued to recover the deficiency from the estate of an indorser of the underlying note. The plaintiffs had applied the proceeds to discharge a prior mortgage, but defendant argued that the second mortgage note should have been discharged as the first priority. The Supreme Judicial Court held that so long as the holders of the two mortgages and the purchaser had agreed that the entire estate was to be sold, the allocation of funds made by the plaintiffs was correct. *See also* Dunbar v. Patrick, 298 Mass. 29, 9 N.E.2d 308 (1937); Donohue v. Chase, 130 Mass. 137 (1881) (suggesting that Morton v. Hall be given a narrow reading, but not challenging its rule as to the facts there, and here, presented); Skilton v. Roberts, 129 Mass. 306 (1880).

**5.** It was these advertisements which appellee relied upon in arguing that the sale price had been depressed by the statement that 180 acres, not 200, were being sold. *See* note 1 *supra*.

**6.** This is not a case like Frederick v. United States, 386 F.2d 481 (5th Cir. 1967), where factual issues remained to be resolved. Appellee has nowhere in his pleadings or affidavit challenged the amount of the debts, limiting himself to disputing the SBA's allocation of the sale proceeds. The only issue which we see as open for the district court is the precise amount of the judgment, since interest must be computed.