**In re Edward R. DEL GIZZO a/k/a Ed Conti d/b/a State Plating Company, and Albina A. Del Gizzo, Debtors.**

**MONOPEARL, INC., Plaintiff,**

**v.**

**Edward FELDSTEIN, Trustee, and Edward R. Del Gizzo and Albina A. Del Gizzo, Defendants.**

**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Plaintiff,**

**v.**

**Edward D. FELDSTEIN, Trustee, Defendant.**

**Bankruptcy No. BK–8000133.**
**Adv. Proceedings Nos. 80–0064, 80–0088.**

United States Bankruptcy Court, D. Rhode Island.

Aug. 8, 1980.

Louis A. Geremia, Providence, R.I., for debtors.

Stephen B. Lang, Guido Salvadore, Albert R. Romano, Providence, R.I., for Monopearl, Inc.

Allan M. Shine, Winograd, Shine & Zacks, Providence, R.I., for Rhode Island Hospital Trust National Bank.

Edward D. Feldstein, Providence, R.I., Trustee.

## MEMORANDUM OPINION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard simultaneously on the complaints of Monopearl, Inc. and Rhode Island Hospital Trust National Bank for relief from the § 362 automatic stay and for authority to foreclose their respective mortgages secured by real estate of the Debtors. In the interest of expediency, an abbreviated Order was entered on June 18, 1980, to minimize ongoing preservation expenses and deterioration of the subject property. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752.

Also in the interest of saving time, the parties waived hearing and the presentation of evidence, and have submitted their respective positions in written memoranda, together with an agreed statement of facts as follows: Monopearl, Inc. is the holder of a first mortgage secured by the subject property, and has a maximum possible claim under that mortgage of approximately $110,000. Rhode Island Hospital Trust National Bank has a second mortgage on the same property in an amount in excess of $134,000. The parties agree that the value of the security probably exceeds the amount due under the first mortgage, but that the second mortgage is not fully secured. Since there is no equity, the Trustee has no interest in this controversy.

Because both parties insist on being permitted to foreclose, the question is which secured creditor should be allowed to proceed with foreclosure proceedings, and this presents the specific issue whether this Court has the authority and/or discretion to allow a second mortgagee to foreclose in such circumstances.

In Monopearl's view, this court is without authority to allow a second mortgagee to foreclose on its junior mortgage ahead of a first mortgagee. Such action, Monopearl argues, would disturb the status and relative priority of secured creditors as fixed at the time of the filing of a bankruptcy petition. Moreover, Monopearl argues, established case law mandates that first lienholders be satisfied before junior lienholders are entitled to distribution. Because neither the Bankruptcy Reform Act of 1978, nor case law allows such action, Monopearl requests court permission to immediately be allowed to foreclose upon its first mortgage.

The Bank's position is that the court has the authority, in its discretion, to allow foreclosure of property by a second mortgagee. The equities in this case, in the Bank's view, favor foreclosure by the second mortgagee, since such foreclosure would not impair any rights of the first mortgagee. Allowing Monopearl to foreclose, on the other hand, would cut off any interest of the Bank in the property. The Bank argues that a foreclosure by Monopearl would force the Bank to satisfy its secured claim out of the surplus of such sale, if any, and to look to the estate as a general creditor, for any deficiency. This, in the Bank's view, would have a detrimental effect on general creditors, as well as on the Bank's ability to protect its own interest in the property.

We must also consider, as Monopearl argues, whether granting the action request by the Bank would disrupt the distributional scheme of the Bankruptcy Code or violate other "cardinal principle(s)" of bankruptcy. Monopearl's position is that the rule "first in time, first in right" must be applied here because it would be a violation of the traditional scheme of distribution of assets to secured creditors to allow a junior mortgagee to foreclose ahead of a senior mortgagee. See *In re Freeze-In Manuf. Corp.*, 128 F.Supp. 259 (E.D. Mich. 1955). We disagree.

The provisions of the Bankruptcy Reform Act of 1978 governing relief from automatic stay are found in § 362(d), 11 U.S.C. § 362(d), which provides:

"(d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

terminating, annulling, modifying, or conditioning such stay—. . .

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

Being parties in interest, both Monopearl and the Bank are entitled to relief under this section, since the debtor has no equity in the property, and because this is a Chapter 7 liquidation proceeding, with no conversion and/or reorganization contemplated.

The question, therefore, as stated above, is the extent of the court's authority, in granting relief from automatic stay, to allow a junior mortgagee to foreclose on real property over the objection of the first mortgagee.

Section 362(d) indicates that the court may grant several types of relief in this kind of situation. Relief can take the form of "terminating, annulling, modifying, or conditioning" the automatic stay provisions of the Bankruptcy Code. It appears, therefore, that where two mortgagees seek to foreclose on the same property at the same time, § 362(d) gives the court discretion to tailor the relief to the facts, provided such action does not conflict with any provision of the Bankruptcy Code or other principle of law governing the relationship between secured creditors.

■ Unlike the situation where the trustee sells property free of all tax and statutory liens, and distributes the proceeds among several competing lienholders, *see United States v. New Britian*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *In re Freeze-In Manuf. Corp., supra* ; *see also United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965), a foreclosure sale by a junior mortgagee has no effect on the rights of senior lienholders, *see Brunette v. Myette*, 40 R.I. 546, 102 A. 520 (1918), because the purchaser of a junior mortgage takes subject to the rights of all senior liens and encumbrances. As the Rhode Island Supreme Court stated in *Ar-*

*mand's Engineering, Inc. v. Town and Country Club, Inc.*, 113 R.I. 515, 324 A.2d 334 (1974).

"In a foreclosure of a junior mortgage, the senior mortgage remains on the land and the buyer takes the property, subject to this mortgage which remains on the land, and therefore no rights or claims of senior mortgages are affected." *Supra*, 324 A.2d at 338. *See also Wartell v. Novograd*, 49 R.I. 191, 141 A. 461 (1928).

Similarly here, allowing the Bank to foreclose first can have no effect on the rights of Monopearl under its first mortgage, and we conclude, therefore, that the question whether a junior lienholder can be allowed to foreclose is within the discretion of the court.

■ Since it is agreed that the value of the property is in excess of the balance due on Monopearl's first mortgage, Monopearl's interest is relatively secure no matter which lienholder is allowed to conduct the foreclosure sale. On the other hand, the Bank's junior mortgage would be wiped out at a foreclosure sale by Monopearl, and although any excess from such sale would go to the Bank, the Bank, based on reason and experience, believes that it is better able to protect its obviously precarious position by handling the disposition of the property in whatever manner it deems most commercially sound.

The equitable consideration here is one of weighing the convenience to Monopearl (that is, its ability to be taken out of this situation and probably paid off immediately if it is allowed to foreclose), as against the right of the Bank to attempt to effectuate maximum realization from the disposition of the security, which, of course, is directly connected to what its deficiency will be.

We see less risk of harm to all interested parties, including general creditors, by allowing the Bank the opportunity to foreclose on its mortgage first, particularly since the deficiency resulting from such sale will become a general claim against the estate.

That the Bank has deeper pockets that Monopearl, a fact frequently alluded to by the first mortgagee, is not a consideration which this Court feels can or should influence its decision in this case.

Accordingly, Rhode Island Hospital Trust National Bank is authorized to foreclose its second mortgage, with dispatch, in compliance with the terms of the Order dated June 18, 1980. Said foreclosure shall be subject to the first mortgage of record held by Monopearl, Inc., and the purchaser shall take title subject to said first mortgage. A hearing shall be held within two weeks after the sale to determine the apportionment of expenses incurred in preserving the property and to review and determine reasonable expenses for attorney fees in connection with these proceedings.

The Monopearl complaint for relief from automatic stay is denied, without prejudice to the right of Monopearl to renew said action in the event that a foreclosure sale is not held by the Rhode Island Hospital Trust National Bank within a reasonable time.