Erwin M. BOSLER

v.

Mitchell SUGARMAN.

No. 79–292–Appeal.

Supreme Court of Rhode Island.

Jan. 19, 1982.

Temkin, Merolla & Zurier, Ltd., Amedeo C. Merolla, Barry J. Kusinitz, Providence, for plaintiff.

Smith & Smith, Inc., Z. Hershel Smith, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a default judgment entered in the Superior Court in an action for slander brought by the plaintiff as a result of statements made by the defendant before certain members of the board of trustees of the Jewish Home for the Aged of Rhode Island (the home).

After the defendant had been defaulted for failure to obey a discovery order entered by a justice of the Superior Court, the case was assigned for assessment of damages. The trial justice, who assessed the damages after hearing extensive testimony over a period of three days, entered judgment in the sum of $1,000 for compensatory damages and $5,000 in punitive damages. We affirm. The facts of the case pertinent to this controversy are as follows.

In 1970 plaintiff and members of his family purchased a funeral-home business from defendant and members of defendant's family. As a part of this transaction, defendant agreed not to engage in the funeral-home business for a period of five years and to refrain permanently from the use of the name "Sugarman" in connection with the funeral business. Part of the sale price was financed by defendant. A promissory note, secured by a second mortgage on the funeral-home real estate was given by plaintiff.

Thereafter, disputes arose between plaintiff and defendant which resulted in an abortive foreclosure proceeding that was enjoined by court order. Further correspondence took place in 1972 and 1974 concerning the placing of appropriate fire insurance on the mortgaged premises.

In November 1973 plaintiff was under consideration as a member of the board of trustees of the home. The defendant stated to certain members of the board that plaintiff had been implicated in attempted arson, conspiracy, and intent to defraud an insurance carrier in respect to fires that had occurred on property owned by plaintiff. Although plaintiff was nominated and elected to a position on the board of trustees of the home, he alleged that he was humiliated and embarrassed by the defamatory statements of defendant; he brought suit on May 16, 1974, seeking recovery of both compensatory and punitive damages. The defendant moved to dismiss the complaint on the ground of vagueness, but his motion was denied.

As a part of the discovery process, plaintiff sought to obtain financial records by issuance of a request for production in aid of a deposition to be taken of defendant. Two motions to compel were denied without prejudice on the ground that it was premature to seek such financial records until the time of trial was imminent.

Another motion to compel was filed on August 18, 1978, after plaintiff had received a notice of impending trial. The motion was granted on September 12, 1978, and defendant was given ten days to produce the financial records. The defendant did not comply with the court order but sought by motion to stay the effect thereof. This motion came before the same justice who had granted the earlier motion to compel, and a stay was denied on September 22, 1978. The defendant still did not comply up to the time when plaintiff received a second notice of impending trial on September 26, 1978, stating that the case would be placed on the trial calendar for Monday, October 2, 1978. At this point, plaintiff filed a motion for entry of default which was set down for hearing to Friday, September 29, 1978, at 9:30 a. m. on the formal and special-cause calendar.

On that date defendant's attorney failed to appear although he acknowledged receipt of the omnibus calendar form that had assigned the case to September 29, 1978. At approximately 10:10 a. m. on September 29, plaintiff's counsel met defendant's attorney in the courthouse and offered to go back before the trial justice in order to reopen the question of entry of default. When this offer was declined, plaintiff's counsel presented an order for entry of default to the trial justice and said order was entered on September 29, 1978.

Subsequently, defendant filed a motion to vacate the entry of default on the ground of excusable neglect. The trial justice who entered the default denied the motion to vacate on January 17, 1979. No transcript of the justice's decision or of the proceedings on this motion to vacate has been presented by defendant to this court. Thereafter, the case was assigned for oral

proof of claim, and plaintiff subpoenaed the documents relating to defendant's financial records. In spite of the prior judicial determinations concerning the production of these records, defendant filed a motion to quash the subpoena duces tecum. This motion was denied by another justice of the Superior Court on March 15, 1979. The oral proof of claim came before still another justice of the Superior Court on April 25, 1979. The documents had still not been produced. The trial justice was a model of patience and forbearance throughout this hearing and ultimately accepted a stipulation by the parties that defendant could respond to a judgment for punitive damages "up to and including $50,000." After hearing extensive testimony and going into the facts of the case in great detail, the trial justice made the following determinations:

"[T]he statements made by the defendant were, in and of themselves, slanderous per se. They accused the plaintiff of several criminal offenses: One, attempted arson; another, conspiracy; another, intention to defraud an insurance carrier. Inferentially, all of those crimes could be inferred from the statements.

"They were uttered by Mr. Sugarman as a result of what appeared to this court to have been professional jealousy against a competitor in the funeral business. The statements made by Mr. Sugarman were clearly false, and Mr. Sugarman knew or should have known, but for his jealous blindness, that the statements were false. His recitation of how he attempted to verify the information he had prior to the October meeting leaves a lot to be desired. Putting it bluntly and speaking in the vernacular, he acted with reckless disregard to whether the statements were true or not. Such willful, deliberate and reckless conduct certainly permits this Court to find that his actions were malicious and were prompted by a then existing malice against Mr. Bosler.

"* * *

"For this reason damages, both compensatory and punitive, are not only in

order but necessitated by the general circumstances of this case."

The defendant raises several issues on appeal, some of which are foreclosed by reason of the default judgment. We shall first deal with those issues that relate to the entry of default and the refusal of a justice of the Superior Court to vacate the default judgment.

## I

There are few cases in which a defendant has shown more complete defiance of court orders than in the case at bar. He was repeatedly ordered by a Superior Court justice to provide financial records that were relevant on the issue of punitive damages. *Sherman v. McDermott*, 114 R.I. 107, 329 A.2d 195 (1974); *Norel v. Grochowski*, 51 R.I. 376, 155 A. 357 (1931). Nevertheless, defendant persistently and without justifiable cause ignored orders compelling such production. Upon the eve of trial plaintiff moved for entry of judgment by default, one of the sanctions provided by Rule 37 of the Superior Court Rules of Civil Procedure. Certainly, if such a sanction might ever have been justified, the persistent refusal of defendant to make discovery in defiance of court orders would have justified such an entry in this case.

In respect to the motion to vacate the entry of default, a Superior Court justice, after hearing, denied the motion. Since defendant has seen fit not to provide us with a transcript of those proceedings or of the justice's decision in respect to this motion, we are limited in review to an examination of the motion, the objection to the motion, and plaintiff's attorney's affidavit in support of the objection. A review of these documents would clearly indicate that the trial justice did not abuse his discretion in declining to remove the entry of default. *See Providence Gas Co. v. Biltmore Hotel Operating Co.*, 119 R.I. 108, 376 A.2d 334 (1977). Indeed, the conduct in this case would doubtless have been sufficiently egregious in ignoring orders to compel to have satisfied the dissenters in the *Providence Gas Co.* case. We find no abuse of discretion in the justice's refusal to remove the default judgment.

## II

The defendant further argues that the decision of the Superior Court in awarding compensatory and punitive damages was erroneous. The defendant's argument must be considered in the light of our familiar rule that findings of fact made by a trial justice in a nonjury case are entitled to great weight and are not to be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice has overlooked or misconceived material evidence. *Ambrosino v. Bevilacqua*, 118 R.I. 369, 375 A.2d 404 (1977); *Raheb v. Lemenski*, 115 R.I. 576, 350 A.2d 397 (1976); *Shoor-Elias Glass Co. v. Raymond Construction Co.*, 114 R.I. 714, 339 A.2d 250 (1975).

An examination of the record in this case amply supports the findings of fact made by the trial justice. His findings that the statements made by defendant were "clearly false" and made with "reckless disregard to whether the statements were true or not" amply buttress the conclusion that the actions were malicious. He further found that at the time of the board meeting defendant "act[ed] with ill·will and malice against [plaintiff]." Such a finding made the modest assessment of punitive damages in the sum of $5,000 eminently reasonable in view of the parties' stipulation.

The award of compensatory damages in an action for slander may be based upon the mental anguish and humiliation experienced as a result of the defamatory statements. In this respect it is analogous to an action for false imprisonment. *See Webbier v. Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 254 A.2d 285 (1969); *Della Posta v. Rand Express Freight Lines, Inc.*, 86 R.I. 148, 133 A.2d 775 (1957). Moreover, when defamatory matter is actionable per se, mental suffering is always a proper element to be considered in fixing the amount of damages which plaintiff is entitled to recover. The authorities

are virtually unanimous in support of this proposition. The cases on this point are collected at 90 A.L.R. 1175 (1934). The determination of appropriate recompense for mental suffering in an action for defamation is peculiarly the province of the trier of fact. *Childers v. San Jose Mercury Printing and Publishing Co.*, 105 Cal. 284, 38 P. 903 (1894); *Wilson v. Fitch*, 41 Cal. 363 (1871). In addition to the mental suffering and humiliation, there was testimony that plaintiff had suffered injury to his health as a reaction to the statements made by defendant. Under these circumstances, the compensatory award in the amount of $1,000 was not excessive or clearly wrong. The trial justice's comment that "an award for compensatory damages in the amount of $1000 would more than compensate Mr. Bosler for his personal injury and his mental upset" was merely a mode of expression that the compensation was adequate in amount and therefore should not be construed as indicating that the award was in any way excessive when viewed in the light of the decision as a whole.

An additional issue sought to be raised by the defendant is the correctness of the determination by the Superior Court that the complaint was not specific enough in its description of the slander to enable the defendant properly to plead thereto. We are of the opinion from our examination of the complaint in the light of *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 227 A.2d 582 (1967), and its numerous progeny that this assertion borders upon the frivolous. Moreover, since the defendant was properly defaulted and since his motion to vacate the default was properly denied, he is precluded from attacking the technical adequacy of the complaint in any event. The default judgment forecloses litigation of issues in respect to liability. *Fudim v. Kane*, 48 R.I. 155, 136 A. 306 (1927).

For the reasons stated, the appeal of the defendant is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.

MURRAY, J., did not participate.