**376 A.2d 334.**

Providence Gas Company *vs.* Biltmore Hotel
Operating Co. *et al.*

AUGUST 2, 1977.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J.   This is an appeal by the defendant, Gotham Hotels Ltd., from a Superior Court judgment entered in favor of the plaintiff, Providence Gas Company, after the defendant had been defaulted for failure to comply with orders to answer the plaintiff's interrogatories.

The action arose when the Providence Gas Company filed a complaint charging the Biltmore Hotel Operating Company, Inc. (Biltmore)[1] and Gotham Hotels, Ltd. (Gotham)[2] with failure to pay an overdue gas bill in the amount of $40,000. At the same time, plaintiff moved for a writ of attachment to permit attachment of defendant Gotham's real property. The defendants' answer admitted

---

[1]Biltmore Hotel Operating Company, Inc., is a Rhode Island corporation.

[2]Gotham Hotels, Ltd., is a Delaware corporation which is qualified to do business in Rhode Island.

Biltmore's liability but denied that Gotham was liable, and also denied that the amount of the liability was $40,000.[3]

The motion for a writ of attachment was denied by a Superior Court justice because plaintiff was not able to adequately establish a connection between Biltmore and Gotham and was therefore unable to demonstrate that the probability of recovery from Gotham was sufficient to justify attachment of its real estate. The plaintiff then attempted to further establish the nature of the connection by serving interrogatories on Gotham on February 28, 1975.

Having received no reply to its interrogatories, plaintiff filed a motion on April 10, 1975, to compel Gotham to answer. Gotham, having filed no objection to this motion, was deemed to be under an order to answer according to Super. R. Civ. P. 7(b)(3)7.

On June 30, 1975, plaintiff filed a motion for entry of a default judgment against Gotham for failure to comply with the discovery order. This motion was heard on July 8, 1975, and a conditional default was entered, with the condition that it would be removed if Gotham answered the interrogatories within 60 days.

On September 26, 1975, approximately three weeks after the 60-day period had expired, Gotham filed what purported to be its answers to interrogatories.

On October 2, 1975, plaintiff filed a motion to strike the answers on the grounds that they were not timely and that they were not answered by an officer of Gotham. On October 10, plaintiff filed a motion to attach Gotham's real estate, and a motion to have a default judgment entered in accordance with the court order of July 8, 1975. Gotham countered with a motion to remove the default on the grounds that the answers had been filed and that the lack of timeliness was due to inadvertence.

---

[3]The amount of liability is not part of the case on appeal. An oral proof of claim showed the amount to be $36,185.21 plus interest.

The attachment was granted on October 20, and the other motions were heard on October 29, 1975. After this hearing, the Superior Court justice issued an order on November 5, in which she refused to vacate the default and also struck Gotham's answers to the interrogatories. The motion for entry of judgment was continued until November 18, when a hearing was held before another justice on plaintiff's oral proof of claim. On November 19, 1975, final judgment was entered in favor of plaintiff and against Gotham in the amount of $38,356.32

The appeal that has been filed by Gotham indicates that the order of November 5, 1975, refusing to vacate the default is being appealed. However, it is apparent that this was interlocutory and not a final order, the final judgment not being entered until November 19, 1975; and it was therefore not appealable. Furthermore, Gotham seems to believe that its motion to vacate the default was made in accordance with Super. R. Civ. P. 60(b). We note, however, that Rule 60(b) applies only to final judgments or orders, and therefore Gotham's motion was only addressed to the trial justice's inherent power to modify outstanding interlocutory orders and was not sanctioned under Rule 60(b). *See Murphy* v. *Bocchio*, 114 R.I. 679, 338 A.2d 519 (1975).

From the foregoing, it is evident that we must treat this as an appeal from the final judgment of November 19, and not as an appeal from the interlocutory order of November 5, 1975. Thus, the issue on appeal becomes a question of whether the justice who entered final judgment erred because he relied on the decision of the justice who denied Gotham's motion and granted plaintiff's motions. This boils down to a question of whether the trial justice who entered the default abused her discretion in refusing to vacate it and in refusing to allow Gotham to proceed with its defense.

Although it is the most drastic of sanctions that can be employed for failing to answer interrogatories, there is no doubt that entry of judgment by default is provided for in

the rules. Super R. Civ. P. 37(b)(2)(iii) provides that for failure to comply with an order to answer interrogatories, a court may proceed to "order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Gotham argues that the refusal to remove the default amounted to a denial of due process because Gotham never had its "day in court." It cites cases such as *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S. Ct. 1087, 2 L.Ed.2d 1255 (1958), to support this argument. However, neither that case nor any of the other cases cited by Gotham go so far as to say that a default for failure to comply with discovery orders is per se a denial of due process. They merely stand for the proposition that it is a drastic remedy that is not to be applied lightly.[4]

This court has had a number of occasions to review default judgments, although most of them were for failure to respond to pleadings rather than failure to comply with discovery orders. *See Stevens v. Gulf Oil Corp.*, 108 R.I. 209, 274 A.2d 163 (1971); *Bloom v. Trudeau*, 107 R.I. 303, 266 A.2d 417 (1970); *Greco v. Safeco Ins. Co. of America*, 107 R.I. 195, 266 A.2d 50 (1970); *King v. Brown*, 103 R.I. 154, 235 A.2d 874 (1967). However, whenever relief from default has been requested, we have noted that it "is addressed to the judicial discretion of the justice having jurisdiction over the matter and his ruling will not be disturbed by this court, absent a showing of abuse of discretion or an error of law." *Bloom v. Trudeau, supra* at 305, 266 A.2d at 418.

---

[4]In *Societe Internationale pour Participations Industrielles et Commerciales S.A. v. Rogers*, 357 U.S. 197, 78 S. Ct. 1087, 2 L. Ed.2d 1255 (1958), the Court ruled that dismissal of a complaint was not justified in view of the good-faith efforts to comply with discovery, and the constitutional considerations involved in producing bank records which could have exposed petitioner to criminal prosecution in a foreign jurisdiction.

■ The record indicates that Gotham ignored the interrogatories propounded on February 28, 1975, ignored the order to compel which was effective on April 17, 1975, and ignored the order for default entered July 8, 1975, giving it 60 additional days to answer or be defaulted. Finally, on September 26, 1975, about three weeks after the 60-day deadline had expired, Gotham filed answers to the interrogatories which were considered by the Superior Court justice to be so patently insufficient as not to be answers at all. She therefore had the answers stricken and denied the motion to remove the default. Under the circumstances, we do not find that this was an abuse of discretion.

■ The answers that were submitted on behalf of Gotham were signed by one Edward Paul of Brooklyn, New York, who claimed to be a former rental agent for Gotham. He also claimed that there were no present officers of Gotham, nor had there been any for the past five years. If this were true, it would certainly be interesting to find out how Mr. Paul, who apparently has no present connection with Gotham as an officer or agent, received authority to answer the interrogatories on behalf of Gotham.[5] The certified copies of Gotham's annual reports in Rhode Island for the past few years (which include a list of officers), as well as the Rhode Island certificate of corporate existence dated October 15, 1975, indicate that Mr. Paul not only did not have the authority to answer for Gotham but also that he did so with an apparent disregard for the facts. The number of inconsistencies between Mr. Paul's answers and the annually filed reports and other documents in the record, as well as his apparent lack of authority to answer, certainly justified the striking of these answers as not in fact being answers.

The Superior Court justice went on to deny the motion to vacate the default because of this failure to properly re-

---

[5]Super. R. Civ. P. 33(a) requires that interrogatories to corporations be answered by an officer or agent of the corporation.

spond to the interrogatories. The defendant Gotham says that this amounted to a denial of due process. In an affidavit submitted by Gotham's New York attorney, he claimed that he was unable to locate anyone to answer for Gotham until September 12, 1975, when he located Paul, the former rental agent. This was over six months after the interrogatories had initially been filed, and also after the 60-day deadline that had been set. The Superior Court justice apparently considered this to be part of a continuing pattern of evasion and postponement of obligations to answer the interrogatories, and she refused to vacate the default.

While the drastic remedy of judgment by default is not to be employed lightly, we think that the Superior Court justice gave Gotham every opportunity before using it. The record is replete with motions and orders that were ignored, and it is clear that Gotham chose to procrastinate rather than take advantage of the offered opportunities to answer without penalties. If the rules of procedure are to have any meaning, they must have some force behind them, and we find no abuse of discretion in defaulting the defendant Gotham under these circumstances. *See Murphy* v. *Bocchio, supra* at 685, 338 A.2d at 524.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to Superior Court.

MR. JUSTICE JOSLIN, with whom CHIEF JUSTICE BEVILACQUA joins, dissenting. I believe that imposition of the extreme sanction of default on the defendant for failing to furnish timely and adequate answers to the interrogatories would be warranted only in circumstances more egregious than those that prevail here. The overriding requirement of Super. R. Civ. P. 37(b) and (d) is that the court "make such orders * * * as are just," and "justice requires that the most drastic sanctions be reserved for flagrant cases." 8 Wright & Miller, *Federal Practice and Procedure* §2284, at 767-68 (1970); *accord, Independent Productions Corp.* v. *Loew's*

*Inc.*, 283 F.2d 730, 733 (2d Cir. 1960). Nevertheless, the choice of sanctions under Rule 37 was committed to the trial justice's discretion, *Robison* v. *Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966); and I might find it difficult to say that she abused her discretion in this case, were it not that, barely 5 months before entry of the default, another Superior Court justice denied leave to attach the defendant's real estate because of the plaintiff's failure to show a reasonable probability of success on the merits.

In the light of that determination, however, and absent specific finding that defendant acted in bad faith or was guilty of some other flagrant abuse, I do not believe that the trial justice should have initially deprived defendant of its day in court, without first attempting to induce compliance by means of a less drastic sanction than default. *See Sapiro* v. *Hartford Fire Ins. Co.*, 452 F.2d 215, 217 (7th Cir. 1971). After all, the purpose of the sanctions authorized by Rule 37 is to secure compliance with the discovery rules, not to punish erring litigants for noncompliance. *Dorsey* v. *Academy Moving & Storage, Inc.*, 423 F.2d 858, 860-61 (5th Cir. 1970); *Robison* v. *Transamerica Ins. Co.*, *supra* at 39.

That purpose could better have been achieved in this case had the trial justice patterned her action on that taken in *Allied Artists Pictures Corp.* v. *Giroux*, 50 F.R.D. 151 (S.D.N.Y. 1970). In that case, the trial judge described as "reprehensible" the "dilatory and inconsiderate" conduct of the defendant's counsel in failing to submit timely and adequate answers to the plaintiff's interrogatories. *Id.* at 152. Nevertheless, he rejected as "too harsh a remedy" the plaintiff's suggestion that the defendant be defaulted; instead, he imposed pecuniary sanctions as appropriate "both to compensate plaintiff for its expenses and deter repetition of such blatant disregard for the Federal Rules." *Id.*

Had similar restraint been exercised by the trial justice here, the plaintiff would not have been prejudiced, *cf. Kor-*

*sak* v. *American Motorists Ins, Co.*, 87 R.I. 89, 94, 138 A.2d 419, 422 (1958); default would have remained available as an ultimate sanction had the defendant persisted in its failure to make discovery; and perhaps we would not have been called upon to put a stamp of approval on a default judgment of almost $40,000 in favor of a plaintiff who only a few months previously was held on an identical record to have no reasonable chance of success on the merits.

I respectfully dissent.

*Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley, Howard E. Walker,* for plaintiff.

*Dick & Hague, William F. Hague, Jr.,* for Gotham Hotels, Ltd., defendant.