Ruth M. SENN

v.

SURGIDEV CORP.

No. 92–630–A.

Supreme Court of Rhode Island.

May 27, 1994.

Frederic A. Marzilli, Marzilli & Lanni, Providence, for plaintiff.

Paul A. Anderson, Anderson, Anderson & Zangari, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter came before this court on the appeal of the defendant, Surgidev Corp. (Surgidev), from a Superior Court order granting the motion of the plaintiff, Ruth M. Senn (Senn), for a default judgment[1] and contempt and her request for costs.

This appeal in large part reflects an escalated level of conflict between the parties' attorneys regarding discovery matters. This conflict has diverted the course of this lawsuit from actually addressing the merits of Senn's claims and Surgidev's defenses. The facts and travel of the case are detailed below. Because we are reviewing a ruling regarding certain aspects of the discovery process, it is necessary that we describe the parties' exchange of discovery requests and responses.

In July 1988 Senn's counsel filed a complaint on her behalf, alleging that in 1982 she had received a surgical implantation in her eye of a Leiske lens that Surgidev had manufactured. As a result, she claimed, she suffered severe personal injuries, including the loss of vision in her left eye. She alleged that Surgidev had been negligent in several respects, including the manufacture, design, testing, merchandising, and investigation of the lens, as well as Surgidev's failure to provide adequate safeguards and warnings. She also asserted a claim for relief based on an implied-warranty theory.

The parties commenced the discovery process, which ultimately resulted in the action appealed to this court. In June 1989 Senn's counsel propounded forty-nine interrogatories to Surgidev, having received permission from the Superior Court to exceed thirty interrogatories, pursuant to Rule 33(b) of the Superior Court Rules of Civil Procedure. The interrogatories sought detailed information regarding a variety of diverse matters such as the development, testing, distribution, use, and evaluation of the lens in question. The interrogatories also requested lists of all records relating to the development and testing of the lens, including records no longer in Surgidev's possession, and lists of published, printed, and videotaped promotional materials, labels, pamphlets, inserts, advertising, and other such materials, among other things.

Several months after serving Surgidev's counsel with the interrogatories, in November 1989 Senn's counsel filed with the court a motion to compel Surgidev to respond to the interrogatories, which motion was entered under rule of court. Surgidev objected, and a Superior Court justice held a hearing in December. An order entered in February 1990 relative to that hearing granted Senn's motion to compel answers to interrogatories and ordered that Surgidev would have forty-five days from the date of the hearing to answer Senn's interrogatories.

In April 1990 Senn's counsel served a request for production addressed to Surgidev, specifically seeking a lens similar to the lens that had been implanted in and later removed from Senn's eye. On April 25, 1990, Senn's counsel filed a motion to default Surgidev for its failure to comply with the order compelling it to answer Senn's interrogatories. The motion requested that if the answers were not supplied within ten days of the date of the hearing on the motion to default, default would enter without further action by Senn. Surgidev filed an objection.

More than a year after the interrogatories had been served on Surgidev, in August 1990, Surgidev's counsel served Senn's counsel with Surgidev's answers to interrogatories and filed a copy with the court. Surgidev responded to most of the interrogatories, although with regard to more than twenty it answered each query after asserting an objection and affirming that it was not waiving

---

1. The plaintiff filed a motion for a default judgment and contempt, asking the Superior Court to hold Surgidev in contempt of a prior court order entered April 30, 1992, render a default judgment pursuant to Rule 37(b)(2)(iii) of the Superior Court Rules of Civil Procedure, and grant plaintiff her costs and reasonable attorneys' fees relative to preparing and arguing the motion.

The typed order stated that plaintiff's petition for costs under Rule 37 was granted and that her motion for entry of default was granted but "Final" was handwritten before "Default." Surgidev states in its brief that because of the Superior Court's ruling, "a Defendant with an ironclad factual defense on the merits is now facing a proof of claim on damages alone."

its objection by providing an answer. Surgidev's objection to many of the interrogatories was that they were "overbroad, harassing and unduly burdensome."

The following month, in September 1990, Senn's counsel moved pursuant to Rule 37 of the Superior Court Rules of Civil Procedure for an order compelling Surgidev to provide more responsive answers to twenty-nine of her interrogatories. He also filed a request for production directed to Surgidev. Surgidev filed objections to the motion for more responsive answers and the request for production. Senn's counsel subsequently filed a motion to compel the production of documents, a motion to reactivate the motion for more responsive answers to interrogatories (which motion had not yet been heard), and a notice for the deposition of Paul Mason (Mason). Surgidev's counsel objected to Senn's two motions and moved for a protective order, requesting a six-month continuance for Mason's deposition. Senn's counsel objected to the motion for a protective order. After a hearing on May 22, 1991, the motion justice ordered that Surgidev (1) make Mason available for a deposition prior to August 15, 1991, (2) prepare more responsive answers to twenty-nine of the interrogatories that Senn had propounded to it by June 30, 1991, and (3) produce a lens of the type implanted in Senn's eye and copies of certain documents that Senn's counsel had requested, including documents referred to in Surgidev's answers to two of Senn's interrogatories.

On July 2, 1991, Senn's counsel filed a motion for entry of conditional default for Surgidev's alleged failure to comply with the order of the motion justice with respect to Senn's request for more responsive answers to interrogatories and request for production. At a hearing the motion justice subsequently ordered the conditional default of Surgidev, to be entered by the court within thirty days of the date of the order, or August 9, 1991, unless Surgidev complied with almost the same requirements ordered by the motion justice in May. The order explicitly stated that Senn would not be required to move for the entry of default if the mandated more responsive answers and items were not produced. On August 22, 1991, Senn's counsel filed a motion to enter default judgment against Surgidev because of its failure to comply with the July order to the extent that it had not supplied the required materials. The following day Surgidev objected to Senn's motion and filed a response to Senn's request for production, stating that it had informed Senn's counsel that all the requested materials were available for review and copying. The response also stated that because of the "voluminous nature of these documents," copies would not be filed with the court until Senn's counsel decided which documents were "germane to the issues in dispute in this case."

A few days later Surgidev filed more responsive answers to interrogatories, not yet executed. The document stated that Mason, who would sign the interrogatories, remained available for his deposition, which had been delayed at the request of Senn's counsel to afford him an opportunity to review additional materials provided. On September 9, 1991, Surgidev filed with the court supplemental answers to interrogatories, executed by Mason, as senior regulatory analyst of Surgidev Corporation, and served a copy on Senn's counsel. Most of the supplemental answers provided further information beyond Surgidev's original responses, and many of the answers referred to documents that Surgidev had made available for review and copying.

On January 8, 1992, a motion justice held a hearing on Senn's motion for entry of a default judgment. Senn's counsel stated that a Superior Court justice had heard his client's motion for the entry of default judgment in August and that the hearing was continued twice to allow him an opportunity to review the more responsive answers to interrogatories and to obtain the records that Surgidev had produced. A number of days prior to the hearing, he stated, he and an associate had reviewed one of the boxes of documents produced. He asserted that the problem with Surgidev's "attempt at more responsive answers" was that they referred to the materials required in the request for production sitting in their counsel's office and those boxes of documents were not marked to correspond to the requests. He stated

that he was unsure whether all the documents were a direct response to his request but that they were not available before August 11, and he did not believe that the more responsive answers were more responsive. Surgidev's counsel asserted that the documents had been available since August 22. He also stated that Senn's counsel had waited until the previous Friday to go to his office to examine the documents and then reviewed only one box of them.

The motion justice advised counsel for Surgidev that it was permissible to respond to interrogatories with the production of documents as long as someone would be able to glean the answer from the documents produced. Counsel for Surgidev stated that the documents were "identified as what they are, if they're an F.D.A. [Food and Drug Administration] form, that's what they would respond to." He also averred that the request for production was very broad and that he thought that Surgidev had produced all the materials it had. The following exchange then took place between the motion justice and counsel for Surgidev:

"THE COURT: Well, have you identified which of the documents that you're producing are intended to respond to which interrogatory and which request for production, or are they just in a bunch of boxes?

"[COUNSEL FOR SURGIDEV]: No, they are in boxes, your Honor.

"THE COURT: That's not acceptable, counselor. If you're going to respond to interrogatories or to request[s] for production by handing over documents, you need to identify for counsel which documents you're producing in response to which interrogatory and to which request for production. How quickly can you do that?"

Surgidev's counsel requested thirty days. The motion justice stated:

"I'll give you 30 days to respond to the * * * interrogatories and to supplement

your [answers to the] interrogatories and to respond to the request for production and make full responses and answers, and to the extent that you want to respond by identifying specific documents in each answer, identify which documents are intended to answer the question and the request for production, and I expect those documents to be arranged and collated or categorized or broken down in some fashion that counsel can say, okay, I understand these documents go with that interrogatory. To the extent that the answer can't be extrapolated from the documents that you produce, I expect an answer in writing to be supplemented with respect to the answers to interrogatories. Thirty days."

Prior to the filing or entry of an order relative to the January 8 hearing, on April 1, 1992, Surgidev filed a response to plaintiff's motion heard on January 8, 1992. In it, counsel for Surgidev stated that he had reviewed seven boxes of voluminous materials that Surgidev had provided in response to plaintiff's answers to interrogatories and requests for production and that he had identified the materials that Senn's counsel had sought. He attached a copy of a sketchy two-page index to the contents of each box.[2] The response also requested that Senn's counsel make arrangements to visit the office of Surgidev's counsel "so that he can identify the various materials that he is seeking and a decision can be made at that time as to what, if any, materials are missing."

On April 13, 1992, Senn's counsel filed an order reflecting the motion justice's ruling at the January hearing, which order was entered on April 30. On April 20, 1992, and on May 11, 1992, Senn's counsel filed a motion to compel more responsive and supplemental answers to interrogatories. (These motions were basically identical except for the date on which the hearing was scheduled.) The motions sought supplementation of Surgi-

---

**2.** The index's description of the contents of box No. 1, for example, was as follows:

"Box 1
Adverse Reaction Reports
Vol. 1       12/79–6/81
Vol. 2       7/81–3/82

Vol. 3       4/82–12/82
    Complaint logs"

The index similarly described the contents of the other boxes, including volumes containing additional "Adverse Reaction Reports," "IDE Reports," "PMA Reports," and FDA correspondence relative to various dates.

dev's response to the interrogatory concerning claims and lawsuits arising out of the insertion of the lens, specifically information regarding all claims arising out of the insertion of the lens since October 1989 to the date when the answer was due as well as changes that have occurred in the status of claims and lawsuits identified in Surgidev's original response, served in August 1990. On May 14, 1992, Surgidev's counsel filed an objection to Senn's motion and on May 22, 1992, he filed a response to Senn's motion, stating that Surgidev had originally provided a specific answer. Surgidev alleged that Senn was attempting to expand the scope of the interrogatory to have Surgidev supply "periodic suit reports on all pending litigation," which it stated was "beyond the scope of legitimate discovery." Surgidev also stated that Senn possessed the information necessary to contact the courts where the lawsuits were pending in order to obtain updates.

On June 4, 1992, Senn filed a document entitled "Motion for a Default Judgement and Contempt" pursuant to Rule 37(b), claiming that Surgidev's response to Senn's motion heard January 8, 1992, "utterly fail[ed] to comply with" the court order entered April 30, 1992, requiring Surgidev to identify which documents were intended to respond to which interrogatory and to arrange and collate them. Senn asserted that Surgidev still had not "responded substantively" to the order's requirements in that it had failed to provide a lens, more responsive answers to interrogatories, and copies of adverse-reaction reports and Food and Drug Administration (FDA) directives regarding the lens. Senn moved that the court hold Surgidev in contempt of its April order, issue

a default judgment for Senn pursuant to Rule 37(b)(2)(iii), and grant her other costs and reasonable attorneys' fees in connection with the preparation and argument relative to the motion.

Surgidev's counsel served on Senn's counsel on June 9 and filed on June 11 a document in which Surgidev objected to Senn's motion and sought clarification of discovery. It was stamped that it was not, however, timely filed.

The motion justice heard arguments on June 11, 12, 15, and 22, 1992. At the hearing, counsel for Surgidev explained that Senn's lens had been implanted as part of an experimental procedure monitored and conducted by the FDA and stated that perhaps 172,000 such lenses had been implanted in various patients. He stated that "there is literally an airplane hangar full of materials, most of which clearly would have nothing whatsoever to do with this lady's claim." The motion justice clarified that the sole issue before her was his client's compliance with an order of the court.

Counsel for Surgidev and the motion justice discussed interrogatory No. 6 as an example. The motion justice inquired how many of the thousands of pages contained in the seven boxes were responsive to that query, which asked Surgidev to "[l]ist all of the records (all written and preserved information in any form) which the Defendant now has relating to the development and preliminary testing of the Leiske Intraocular Lens Style 10 including any clinical trials as well as experiments on animals as well as humans, itemizing each such document, report[ ], etc., and state the name and address of the person(s) making the same."[3] Coun-

---

3. Surgidev's initial answer to this interrogatory was as follows:

"*Objection.* Surgidev objects to this interrogatory because it is overbroad, harassing and unduly burdensome.

"*Answer* [.] Without waiving this objection, Surgidev states that the principal documents are the investigational device exemption application (IDE), the pre-market approval application (PMA), and manufacturing records specific to the lens at issue. Paul Mason has knowledge and custody of such records. Surgidev will produce these documents pursuant to appropriate document requests."

In Senn's motion for more responsive answers to interrogatories, filed in September 1990 and reactivated in April 1991, she stated that the information that she sought in interrogatory No. 6 was a description of all those records sufficient for her to frame a request for production. Subsequently, in its supplemental answer to No. 6, Surgidev stated:

"The documents and information responsive to this sweeping interrogatory are part of the voluminous documents exchanged by Surgidev and the FDA regarding the Style 10 lens. All of these regulatory documents are being made available to plaintiff for inspection and, if desired, copying

sel for Surgidev at first stated that it was difficult to extrapolate and claimed that he was not sure what Senn sought and that he had given Senn's counsel "all of the materials which appear to have anything to do with analogous kinds of problems." After further discussion and clarification of the motion justice's query, counsel for Surgidev stated that every document he had would be responsive because they all relate to the clinical trials that were conducted with this lens for about eleven years. The following exchange then occurred between counsel for Surgidev and the trial justice:

"THE COURT: Are you telling me then that you have offered all of these documents in response to Question No. 6?

"[COUNSEL FOR SURGIDEV]: I am saying, your Honor, that, I will be happy to, for example, have Mr. Mason state that there were no tests done on dogs, etc.

"THE COURT: No. Are you making an affirmative statement to me as an officer of the court that it is those thousands of pages of documents contained in boxes 1 through 7 that your client is offering as a response to Interrogatory No. 6; yes or no?

"[COUNSEL FOR SURGIDEV]: The development and preliminary testing, your Honor—I can't answer the question yes or no, your Honor.

"THE COURT: Then I have to find that you haven't complied. It makes it very easy.

"[COUNSEL FOR SURGIDEV]: I just don't know how to comply, your Honor. Maybe I'm just thick. I don't know how to comply with the Order."

Counsel for Surgidev also explained that his client had been given the interrogatories, and Surgidev proceeded through its counsel in Chicago and its staff in California. His office had not prepared the responses. After much discussion regarding particular interrogatories, Surgidev's being required to answer the questions, the frustration and lack of understanding about how to comply that counsel for Surgidev felt, the prior conditional default order, and other issues, the motion justice stated:

"Surgidev has certainly been given ample opportunity by both myself and another justice of this court to respond. It has a continuing failure to adequately respond to each and every answer, and failure to comply with my Order of January 8, 1992, and [the Superior Court's] earlier Order was not complied with.

"With respect to Interrogatories 7, 8, 13, 16, 29, and 30, there's been no attempt to supplement or respond more fully since my Order. With respect to Nos. 6, 9, 10, 11, 12, 15, 17, 20, 21, 22, 23, 26, 27, 28, 31, 35, and 42[,] documents were offered as an answer. They were not offered in such a fashion as complied with the Order of the Court on January 1st [sic], 1992. And while the defendant corporation argues that the documents made available in response to [the earlier] Order are offered in response to this Court's Order, they're rendered unresponsive by the Defendant's failure to comply with my Order. The Defendant made absolutely no attempt until today after two days of hearings on this motion to comply with my Order by identi-

at plaintiff's expense. These materials include Surgidev's Investigational Device Exemption Application ('IDE') which contains documents relating to the development and preliminary testing of the Style 10 lens, including clinical trials and experiments.

"Surgidev's IDE, Section 3, titled 'Protocol' summarizes the investigational study of the Style 10 lens. An index, or table of contents, is provided for in Section 3. This section specifically describes the clinical study for both the Core Investigation and Adjunct Safety Study groups and includes copies of the related documents.

"Section 4, titled 'Summary Report of Prior Investigations' contains documents relating to Surgidev's pre-clinical trials. The Table of Con-

tents lists each of the test types conducted on the Style 10 lens as required by federal regulation. Pages 1 through 15 provide the name of the test, the testing institution, and a brief statement of the findings.

"Appendix D to Section 4 contains copies of laboratory reports of animal tests and human cell cultures. These tests further describe the biological testing procedures, animal types used, objectives, rationale and observations.

"Subsequent communications between Surgidev and the FDA, all of which are part of our document production, include detailed data regarding the Style 10 lens. You are referred to all of these documents which speak for themselves."

fying which documents are intended to answer the interrogatories.

"Subparagraph 3 of my Order isn't complied with. Just, for example, with respect to Interrogatory No. 6. No. 6 asks the Defendant to list all the documents that relate to certain things. Defendant narrows the field, points to a stack of documents, but doesn't go on to supplement the answer in writing as I directed. If you look at this two-page list, it's clear that it's simply the FDA regulatory materials that [are] being produced. That's not what the question asked.

"Based on the argument I've heard, in reviewing this two-page listing of the seven boxes of materials, it doesn't appear to me that Paragraph No. sub 2 was complied with. Quite frankly, I think the Defendant's failure to comply with the Orders of the Court in the discovery requests [is] blatant, and Defendant is finally defaulted."

With regard to the cost allocation under Rule 37, Surgidev's counsel argued at the hearing that the record indicated that, through counsel, Surgidev had made numerous efforts to comply with the court's orders and "that there was never a refusal to make discovery." He also asserted that Senn's counsel did not spend much time reviewing the documents in his office, which a motion justice had ordered him to do in 1991. He claimed that there was at least a good-faith effort to comply and that there was no justification for requiring Surgidev to pay Senn's counsel fees relative to this motion.

The motion justice stated that the intensity of resistance to making discovery amounted to a refusal to make discovery. She found that the failure to make discovery and the objection to the motion were not substantially justified and that it would not be unjust to award expenses. She criticized Surgidev and its counsel for attempting to "refocus" the discovery by claiming not to understand what Senn's counsel sought, asking why Senn's counsel did not come to review the documents, and stating that it was producing the materials but that Senn should let it know if there was something else Senn wanted. She acknowledged the seriousness of entering a

default in this case and stated that she thought that she and a prior motion justice who had entered a conditional default had been "more than open and responsive to the problems facing Surgidev in dealing with these volumes of documents." She granted a cost allocation of $1,982, the amount set forth by Senn's counsel in the form of an affidavit, to be paid within thirty days by Surgidev itself, rather than by local counsel. The costs were mostly attributable to attorneys' fees. The trial justice recognized that Surgidev's corporate attorney elsewhere had responded to the interrogatories. She stated that she did not fault local counsel with the discovery problems. "I think the burden lies squarely on the shoulders of the corporation itself, and notwithstanding the her[oi]c efforts [counsel for Surgidev] has made to dig his client * * * out of this one," she concluded.

In this appeal Surgidev first asserts that the sanction of a final judgment by default in this case constituted an abuse of the motion justice's discretion. Surgidev maintains that the motion justice had ruled that Surgidev could respond to the orders entered previously "*solely by producing documents*." Surgidev states that these documents had been produced more than five months prior to her order and were awaiting review by Senn's counsel to assess whether they were satisfactory. It also argues that it had complied in a timely fashion with the July 1991 default order, which it states was entered by agreement because the prior discovery order of May 22, 1991, "was on the verge of being complied with," despite the more than 35,000 pages of documents that it entailed. Surgidev avers that final default was entered in this case "against a Defendant which, by everyone's admission, has complied with all outstanding discovery orders within the time prescribed." Surgidev faults Senn's counsel for failing to review the materials it produced before filing a motion claiming that they were inadequate.

Senn asserts that Surgidev's allegation in its brief that it had complied with the prior discovery order is "simply preposterous" and that no one but Surgidev has agreed that Surgidev complied. Senn argues that during

the four days of default hearings, Surgidev vacillated between claiming not to understand how to comply with the prior discovery orders and claiming that it understood them and had complied. Senn contends that the issue here is whether the motion justice abused her discretion. She claims that Surgidev's conduct was worse than the conduct of parties in prior cases in which this court upheld dismissal or default for noncompliance with discovery orders. Senn also acknowledged that in an ideal world the court should not be asked to rule on most discovery requests. The United States Supreme Court has noted "a natural tendency on the part of reviewing courts, properly employing the benefit of hind-sight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order." *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, 751 (1976) (per curiam). This is the case here with the sanction of default judgment. A review of our prior cases is in order.

■ We first note, however, that Rule 37(b) provides the court with a smorgasbord of sanctions for situations in which the court is presented with a party's failure to comply with a discovery order pursuant to Rule 37(a). For example, certain refusals may be considered a contempt of court. *See* Rule 37(b)(1). Additionally, Rule 37(b)(2) provides for other consequences, including the following:

"If any party * * * refuses to obey an order made under subdivision (a) of this rule requiring him or her to answer designated questions or to make discovery under Rule 34 * * * or if a party refuses to answer designated questions after his or her objections thereto under Rule 30 have been overruled by the court, the Court may make such orders in regard to the refusal as are just, and among others the following:

" * * *

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part

thereof, or rendering a judgment by default against the disobedient party."

As discussed below, this case is distinguishable from this court's previous cases in which the court upheld a very severe sanction such as dismissal or judgment by default for failure to comply with discovery orders. We reverse a trial justice's decision to impose sanctions for Rule 37 violations only when we find that he or she has abused his or her discretion. *See Limoges v. Eats Restaurant,* 621 A.2d 188, 190 (R.I.1993).

In *Hodge v. Osteopathic General Hospital of Rhode Island,* 105 R.I. 3, 4–8, 10–11, 249 A.2d 81, 81–84, 85 (1969), this court upheld the Superior Court's dismissal of the plaintiff's case for his failure to file more responsive answers to interrogatories as ordered by the court. After two dismissal orders had been entered against the plaintiff conditioned upon his providing more responsive answers to two interrogatories, the plaintiff advised the motion justice that he would seek the requested information. *See id.* at 5–8, 11, 249 A.2d at 82–84, 85. The motion justice granted the plaintiff additional time for this purpose; the plaintiff again failed to provide the information · to the defendant, and this court later held that the Superior Court justice had not abused his discretion by dismissing the action. *See id.* at 7–8, 10–11, 249 A.2d at 83–84, 85.

Approximately eight years later, in *Providence Gas Co. v. Biltmore Hotel Operating Co.,* 119 R.I. 108, 111–14, 376 A.2d 334, 335–37 (1977), this court found no abuse of discretion in the Superior Court's refusal to vacate a default judgment that had been entered pursuant to Rule 37(b)(2)(iii) for a defendant's failure to respond properly to the plaintiff's interrogatories. The record indicated that the defendant had ignored the plaintiff's interrogatories, the court's order compelling it to answer, and the court's order for default. *See* 119 R.I. at 113, 376 A.2d at 336. When the defendant finally did answer the interrogatories after the deadline, the Superior Court justice deemed them so blatantly insufficient that they did not constitute answers, and she ordered them stricken and denied the motion to remove the default.

*See id.* at 113, 376 A.2d at 336–37. The court acknowledged that judgment by default was the most draconian sanction for failing to answer interrogatories but stated that it was indeed provided for in Rule 37. *See id.* at 111–12, 114, 376 A.2d at 336–37. The court also pointed out that the trial justice had afforded the defendant "every opportunity before using it." *See id.* at 114, 376 A.2d at 337. Two justices dissented, concluding that the defendant's conduct in this case was not egregious enough to warrant default. *See id.* at 114–15, 376 A.2d at 337–38 (Joslin, J., Bevilacqua, C.J., dissenting).

This court also found no abuse of discretion under Rule 37 in a trial justice's refusal to remove a default judgment in a case involving "the persistent refusal of defendant to make discovery in defiance of court orders." *See Bosler v. Sugarman,* 440 A.2d 129, 132 (R.I.1982). This court noted that the defendant was repeatedly ordered to provide financial records and "persistently and without justifiable cause" refused to comply with orders compelling this production. *See id.* The court characterized the defendant's conduct as sufficiently egregious to satisfy the dissenters in *Providence Gas. See id.*

Furthermore, this court has upheld the conditional dismissal of the plaintiff's complaint when the plaintiff exhibited persistent defiance of the court's order to answer the defendant's interrogatories. *See Francis v. Barber Auto Sales, Inc.,* 454 A.2d 703, 704–05 (R.I.1983). This court has also found that a trial justice did not abuse her discretion by entering default in a case in which she had justifiably concluded that, as this court phrased it, the "defendant had participated in an orchestrated effort to obstruct, delay, and hinder all normal discovery procedures." *See Roberti v. F. Ronci Co.,* 486 A.2d 1087, 1088 (R.I.1985) (per curiam).

In addition, this court affirmed a default judgment entered after the defendant had failed to comply with the plaintiff's discovery request in a timely manner and had stalled and ignored court orders. *See Fournier v. Town of Coventry,* 615 A.2d 118–19 (R.I. 1992) (per curiam). The *Fournier* court noted that the defendant had received numerous extensions for producing documents and had

been defaulted twice before but both times had the default judgments vacated. *See id.* at 118. The court concluded that the record contained "a plethora of evidence demonstrating that the [defendant] grossly violated the spirit of discovery with unequivocal bad faith." *See id.* at 119.

This court has, however, held that a trial justice abused his discretion when he removed a conditional order of dismissal and affirmed that removal, allowing the plaintiff to file answers to interrogatories out of time. *See Thompson v. Thompson,* 554 A.2d 1041, 1042–43 (R.I.1989). The plaintiff had failed to answer the defendant's interrogatories until about seven years after their submission and almost four years subsequent to the granting of a conditional order of dismissal. *See id.* at 1043.

This court is not likely to reverse on the basis of abuse of discretion when a rule provides for alternative sanctions and the trial justice selects the sanction that he or she deems the most appropriate for the particular case. *See Margadonna v. Otis Elevator Co.,* 542 A.2d 232, 233 (R.I.1988). In certain cases, however, we find that the purposes of the Rules of Civil Procedure, the interests of the parties, and the interests of the judicial system are better served by permitting the parties to address the merits of the claims and defenses asserted in the lawsuit rather than allowing an escalated discovery conflict effectively to close the courthouse doors. In the circumstances of this case, we do not see the same level of persistent refusal or defiance or bad faith on which this court has in the past grounded its affirmance of the most severe discovery sanctions. We therefore conclude that the trial justice abused her discretion in granting plaintiff's motion for a default judgment.

■ In regard to the award of costs, Surgidev argues that the award of approximately $1,980 represents an egregious abuse of discretion by the trial justice and reflects "whim and caprice," rather than the requisite "sound judicial judgment made in the interest of justice and fair play." Additionally, Surgidev asserts that if its counsel had not objected to Senn's motion for final default "or sought the Court's help in resolving the

discovery issue (which request was ignored), a legal malpractice claim would surely have followed."

Senn argues that whether a finally defaulted defendant can also be assessed attorneys' fees has not been decided in Rhode Island. Senn claims that Surgidev has not offered a justifiable legal reason for its failure to comply with the discovery orders and that the trial justice did not abuse her discretion. She contends that penalizing a very obstinate and defiant party is warranted under Rule 37.

■ Rule 37(a) provides that if a motion to compel discovery is granted,

> "the court shall, after opportunity for hearing, require the party or deponent whose failure to answer adequately or otherwise to make discovery necessitated the motion, or the party or attorney advising such conduct, or both of them, to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that opposition was substantially justified or that other circumstances make an award of expenses unjust."

The rule also requires cost awards in certain cases if the motion is denied or partially granted. *See* Rule 37(a). The Reporter's Notes, however, state that the sanction of ordering the payment of expenses under Rule 37(a) has in practice "been reserved for outrageous conduct." Although Rule 37(b) does not specifically list awarding costs or attorneys' fees, it affords the court very broad discretion to "make such orders in regard to the refusal [to obey an order issued pursuant to Rule 37(a)] as are just." We think that this rule empowers the trial justice in some cases to award attorneys' fees or costs. We now review two cases involving awards of attorneys' fees under Rule 37(a) because similar principles are implicated.

This court recently upheld an award to the defendant's counsel of $800 in attorney's fees when the plaintiff's counsel had filed objections to discovery requests without any explanation and when it was evident to the plaintiff's counsel at the outset that some of the requests were valid. *See Limoges,* 621 A.2d at 189–90. We noted that in the past this court had held that the type of "bad faith" that justifies an award of attorney's fees can be established by showing that a party's uncooperativeness "in granting a plaintiff his [or her] clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *See id.* at 190 (quoting *Quill Co. v. A.T. Cross Co.,* 477 A.2d 939, 944 (R.I.1984)). In this case we do not find bad faith, and therefore, *Limoges* is distinguishable.

In *Fremming v. Tansey,* 626 A.2d 219, 220–21 (R.I.1993), we found that a trial justice had abused her discretion by awarding $325 in costs for the defendant's motion to compel the production of documents. That case was unusual because the plaintiff's counsel had not requested an award of costs and joined the defendant's counsel in requesting that the Supreme Court vacate the award. *See id.* at 220. This court did, however, analyze whether the actions of the defendant's counsel warranted sanctions pursuant to Rule 37(a). *See* 626 A.2d at 220–21. We concluded that defense counsel's motion to compel was substantially justified and constituted part of a "sound litigation strategy." *See id.* at 221.

■ Our standard of review for evaluating sanctions for Rule 37 violations is abuse of discretion. *See Limoges,* 621 A.2d at 190. In this case we think that the trial justice abused her discretion by awarding costs to Senn. Defense counsel's opposition to plaintiff's motion was substantially justified, although unavailing at that level. His conduct was also not outrageous or reflective of bad faith.

We think it advisable to provide some direction for the discovery process in this case on remand. The motion justice ordered that Surgidev provide more responsive answers to Senn's interrogatories and respond to Senn's request for production of documents and the lens as directed in the 1991 order granting Senn's motion for entry of conditional default. She also specified that Surgidev was permitted to produce documents in order to provide more responsive answers to interrogatories as long as it (1) identified which documents were intended to answer a particular

interrogatory and (2) arranged and collated or otherwise categorized any documents so that Senn's counsel could ascertain which documents correspond with which interrogatory response. She further ordered that Surgidev supplement the answers to specific interrogatories in writing to the extent that the answers could not be extrapolated from the documents produced.

We approve of the terms of this order and are persuaded that Surgidev must take further steps in order to comply fully with it. Specifically, for example, we think that in order to respond to interrogatory No. 6 in a complete manner, Surgidev must list all the documents described in the interrogatory and state the name and address of the person who made each listed record. Surgidev may choose to create a chart or find some other way in which to enumerate those documents in the form of a list. Given the apparent volume of documents involved in this matter, we acknowledge that this is a highly unenviable task. However, if Surgidev does not achieve full compliance with the trial justice's order entered April 30, 1992, within sixty days of the date of this opinion, sanctions may be appropriate.

Consequently, for the above reasons the defendant's appeal is sustained, and the judgment appealed from is reversed. The papers of this case are remanded to the Superior Court for further proceedings consistent with this opinion.