DECISION
This matter is before this Court for decision on Petitioner James John Powers' (hereinafter Powers) motion for summary judgment on his application for post-conviction relief.[1]
Jurisdiction in this Court is pursuant to G.L. 1956 (1985 Reenactment) § 10-9.1-2(a).
FACTS AND RELEVANT PROCEDURAL HISTORY
After conviction on May 20, 1982, for felony murder with robbery being the merged felony (hereinafter 1982 Trial), Powers was sentenced to life imprisonment. Powers appealed various discovery and evidentiary issues to our Supreme Court. The Supreme Court remanded the case to the trial justice for an evidentiary hearing (hereinafter Evidentiary Hearing) before ultimately affirming the sentence imposed. See State v. Powers,526 A.2d 489 (R.I. 1987), State v. Powers, 566 A.2d 1298 (R.I. 1989) and Transcript of Evidentiary Hearing on indictment No. K2/81-387.
In this application filed July 28, 1994, Powers now asserts that additional evidence of material facts exists and said evidence, while known to the prosecution team prior to and at the time of the 1982 Trial, was not disclosed to the defense counsel. Specifically, Powers asserts that at an evidentiary hearing:
 a. He is prepared to present substantial evidence that in his 1982 Trial for the above-referenced indictment the "Prosecution," so called, (comprising of the Office of the Attorney General, the Warwick Police, Massachusetts State Police, and witnesses for the prosecution) were in possession of exculpatory evidence of material facts;
 b. He is prepared to show that the Prosecution was in possession of this evidence both before and during the 1982 trial;
 c. He is prepared to show that the Prosecution withheld and/or failed to produce and disclose physical evidence, documents and the occurrence of meetings between the Prosecution and key prosecution witnesses.
Based on these assertions, Powers contends his conviction and sentence should be vacated.
Essentially, Powers argues that he was denied due process of law by the prosecution's failure to supply full discovery and production of exculpatory evidence in violation of Rule 16 of the Rhode Island Superior Court Rules of Criminal Procedure. Powers thereby claims that he has been denied his constitutional rights to (i) effective assistance of counsel and (ii) a fundamentally fair trial. Finally, Powers contends that he was denied his constitutional right to effective assistance of counsel by virtue of the defense representation provided him by the office of the Public Defender in the 1982 Trial. The State's answer, filed October 13, 1994 without objection, essentially denies Power's allegations.
On March 3, 1995, the State filed a motion to assign Powers' application for post-conviction relief to the Superior Court justice who presided at the 1982 trial. Superior Court Order No. 91-22 (II)(D)(3); State v. Pezzucco, 652 A.2d 977 (R.I. 1995); Superior Court Rule of Practice 2.2. Although Powers objected to said motion, the issue became moot because said trial Justice is no longer a member of the Superior Court. Pursuant to Superior Court Rule of Practice 2.2(b), the justice assigned to the [Kent County] civil calendar shall dispose of the application for post-conviction relief in a case wherein the trial justice is no longer a member of the court. During this period, the justice presiding over the civil matters apparently instructed Powers to submit a memorandum delineating the issues, factual and procedural, upon which Power's application is based. Said memorandum, apparently not date stamped by the Clerk's Office, appears to have been mailed to the State on or about February 10, 1995. Subsequently, on June 21, 1995, Powers' initial attorney withdrew, and the court appointed an attorney on July 7, 1995. On October 3, 1995, this case was transferred back to Kent County. A motion to reassign the case to the justice who had been presiding over the Kent civil motion calendar conditionally was granted subject to her acceptance. After a telephone conference with the parties' attorneys on November 7, 1995, said justice declined acceptance, and the case was transferred back to Kent County on November 14, 1995, for disposal by the justice then assigned to the civil calendar.
Powers apparently mailed Requests for Admissions (hereinafter RFA) to the State on November 24, 1995. Said RFA do not appear in the file. The RFA asked the State to admit the genuineness of approximately fifteen (15) documents, and the truth of more than eighty (80) statements. After conference on November 24, 1995, and by agreement of the parties, the following order, in relevant part, entered on December 15, 1995:
 (1) The Petitioner filed Requests for Admissions to the State of Rhode Island on November 24, 1995. The State of Rhode Island shall have thirty (30) days to respond to said admissions.
 . . .
 (3) The parties shall have up to and including March 22, 1996 to conduct and complete discovery.
 (4) Pre-trial memoranda shall be filed by the parties no later than March 25, 1996.
On March 25, 1996, the State timely filed answers to Powers' Second Request for Admissions (hereinafter 2d RFA). Said 2d RFA is not in the file before this Court. With its answers, the State filed a motion for extension and a motion for hearing regarding the State's objections in its answer to the 2d RFA. After a trial calendar call on March 28, 1996, wherein the above two motions were heard, an order entered on April 2, 1996, which granted an extension of time contingent on a specified timetable for trial. Additionally, Powers "shall file his summary judgment motion and memorandum in support thereof on or before April 5, 1996, and the State shall file its opposition, if any, on or before April 22, 1996." Order, April 2, 1996. The State's objections to the 2d RFA and Powers' summary judgment motion were scheduled for hearing on May 3, 1996.
On April 4, 1996, Powers filed his motion for summary judgment and memorandum in support thereof. In said memorandum, Powers' argument is based on the RFA being deemed admitted. On April 15, 1996, the State filed its answer to Powers' RFA. On April 29, 1996, the State filed its ". . . Objection to [Powers'] Motion for Summary Judgment and the [State's] Memorandum in support of its Motion for Summary Judgment." Apparently, no motion for summary judgment was filed with the State's memorandum. By motion dated April 29, 1996, Powers moved to strike (hereinafter motion to strike) the State's answer to the RFA. In addition to relying on Rule 36 of the Superior Court Rules of Civil Procedure (hereinafter Rule 36), Powers subsequently set forth his legal arguments in support of said motion by memorandum filed May 24, 1996.
After a court initiated continuance of one (1) week, Powers' motion for summary judgment, Powers' motion to strike and the State's objection thereto were heard on May 10, 1996. At that time, Powers filed a reply memorandum in support of summary judgment and an additional affidavit (DiLauro). Said memorandum, as indicated to the Court by counsel for Powers, more clearly delineates the precise evidence upon which Powers' application is based.[2] By memorandum and during the hearing, the State represented to this Court that upon service of the RFA, Powers' counsel agreed to provide to the State the 1982 Trial and other transcripts that were in said counsel's custody. Said transcripts apparently were provided to the State in late December 1995 or early January 1996. The State believed an oral agreement allowing an extension of time for the State to respond to the RFA existed between counsel.
During the May 10th hearing, the Court focused the parties' arguments on a threshold issue; that is, in this matter involving application for post-conviction relief, whether the Court should allow the State's untimely answers to the RFA or should all of the RFA be deemed admitted. Decision, reserved pending each party's filing a supplemental memorandum addressing the specific Rule 36 issue in this context and additionally, specifying the particular portions of the transcripts relied on for a favorable outcome, is rendered herein.
REQUEST FOR ADMISSIONS
In a post-conviction relief proceeding, the petitioner "generally bears the burden of proving his allegations by a preponderance of the evidence." Palmigiano v. Mullen,119 R.I. 363, 374, 377 A.2d 242, 248 (1977). The Superior Court Rules of Civil Procedure are applicable to such proceedings. General Law 1956 (1985 Reenactment) § 10-9.1-7; Palmigiano, 119 R.I. at 374, 377 A.2d 248.
Rule 36, in pertinent part provides, that,
 "Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than ten (10) days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he or she cannot truthfully admit or deny those matters or (2) written objection . . . together with a notice of hearing the objections at the earliest practicable time. Superior Court Rules of Civil Procedure. Rule 36, before 1995 amendment.
Rule 36 establishes a "procedure . . . for facilitating the proof at the trial by weeding out facts and items of proof over which there is no dispute, but which are often difficult and expensive to prove." General Electric Co. v. Paul Forsell Son, Inc.,394 A.2d 1101, 1103, 121 R.I. 19, 23 (1978). (Citation omitted). For example, in a tort case alleging assault and battery, false arrest, slander and libel, our Supreme Court affirmed the grant of a summary judgment based on an admission deemed admitted because a party failed to answer or respond to a request to admit the genuineness of a copy of an executed release. Nedder v. RhodeIsland Hosp. Trust Nat. Bank, 459 A.2d 960, 962 (R.I. 1983). Rule 36 "is not an investigative tool for ascertaining facts. Its use is warranted only when the requesting party knows certain facts and, believing them not really in dispute, wants to be relieved of the burden of proving them." Kent, Rhode Island Practice, Section 36.1 (1969). (Citations omitted).
In a matter unlike the one before this Court and wherein a motion to withdraw involuntary admissions was denied, our Supreme Court acknowledged that a party "may obtain a summary judgment in reliance on Rule 36 admissions of the party opposing the summary judgment." Cardi Corp. v. State of Rhode Island, 524 A.2d 1092, 1097 (R.I. 1987), (in part citing, United States v. Kenealy,646 F.2d 699, 703 (1st Cir.), cert. denied, 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981)). In Kenealy, the First Circuit Court of Appeals sustained the District Court's granting a summary judgment based on involuntary admissions under Rule 36, when, in its discretion, the District Court had not, on motion, permitted withdrawal or amendment of answers to a request for admissions.Id. at 703.
Failure of a party to respond timely to a Rule 36 request for admissions generally results in application of the sanction contained in the rule itself; that is, deeming the requests to be admitted. However, in this matter involving post-conviction relief, this Court believes "that the purposes of the Rules of Civil Procedure, the interests of the parties, and the interests of the judicial system are better served by permitting the parties to address the merits of the claims and the defenses asserted . . . rather than allowing a discovery conflict to effectively close the court house doors." See Senn v. SurgidevCorp., 641 A.2d 1311, 1319 (R.I. 1994).
In the absence of precedent involving Rule 36 and post-conviction relief, the Court turns to another jurisdiction for consideration of its experience and reasoning in a matter of this import. See Ciunci, Inc. v. Logan, 652 A.2d 961, 962 (R.I. 1995). In French v. United States, a federal post-conviction relief matter, the Ninth Circuit Court of Appeals affirmed the District Court's action relieving the government from involuntary admissions when it failed to answer a request for admissions within the time specified in the request; the admissions contained therein were not deemed automatically admitted and the District Court granted the government additional time after the hearing to answer. French v. United States, 416 F.2d 1149, 1151-52 (9th Cir. 1969).
In this matter, the Assistant Attorney General has represented to the Court that an answer to the RFA, served on November 24, 1995, could not be readily prepared because all of the requests were not within his personal knowledge or within his ability to readily ascertain because the voluminous transcripts were not immediately available. Further, the Assistant Attorney General contends that an oral agreement about an extension of time to answer the RFA existed between the parties. Said agreement, however, was not memorialized in writing as required by Superior Court Rule of Practice 1.4. The State indicated that a miscommunication pertaining to the time frame for the State's answers to the RFA may have occurred between the parties and that until approximately early January 1996, Powers had possession of some portion of the relevant transcripts.
In this Court's opinion, the various interests hereinbefore stated are better served by hearing this matter on the merits. Under our post-conviction relief statute, Powers is entitled to his day in court. Our General Assembly has provided therein a mechanism whereby one can seek summary disposition which is akin to summary judgment. Here, predicated on the fact that the State failed in a seasonable time to respond to the RFA, the involuntary admissions, if allowed to stand, would provide more than a day in court, essentially Powers would be given freedom. The Court believes it has the inherent power to treat the State's late filed answers to the RFA as an application for leave to file out of time and such leave is granted providing the Attorney General pays whatever expenses, as hereinafter discussed, are ultimately deemed to be Powers' costs for prosecuting his motion to strike and motion for summary judgment. Accordingly, the Petitioner's motion to strike is denied, the State's answer to the RFA is allowed as filed out of time and because Powers' motion for summary judgment relied in substantial part on the RFA being deemed admitted, it must be denied because of the existence of substantial factual issues.
DISCOVERY SANCTIONS
In general, pursuant to Rule 37 of the Superior Court Rules of Civil Procedure (hereinafter Rule 37), the Court has discretion to impose a "smorgasbord of sanctions" for failure of a party to comply with a discovery order. Senn, 641 A.2d at 1318. In practice, the sanction of awarding expenses paid has been generally reserved for outrageous conduct. Reporter's Notes to Super. R. Civ. P. 37(a); Fremming v. Tansey, 626 A.2d 219, 220 (R.I. 1993). A finding of persistent refusal or defiance or bad faith is not a prerequisite to impose sanction unless a more extreme sanction, such as default, is to be imposed. Senn, 641 A.2d at 1319. The exercise of a trial justice's discretion to impose sanctions "involves a rational approach to all the facts;" it requires "a sound judicial judgment made in the interests of justice and fair play." Fremming, 626 A.2d at 220-21. (Citations omitted). A decision to impose sanctions will be reversed only upon a showing of abuse of discretion. Id. at 220. Pertaining to a Rule 36 Request for Admissions, in addition to the sanction of involuntary admission in the absence of a timely response, of course, Rule 37(c) specifically provides that unless the Court finds that there was good reason for denial or that an admission sought was of no substantial importance, upon application and after proof of, the Court shall order payment of reasonable expenses incurred in proving any request denied under oath.
This Court finds that because the State failed to properly comply with discovery, an alternative sanction is appropriate. Specifically, the State failed to comply timely with the Court's order of December 15, 1995, or approach the Court for relief from said order. At no time has the State moved for additional time or for hearing on an objection to the RFA. But for this Court's exercise of discretion resulting in denial of Powers' motion to strike and deeming timely the State's answer to the RFA, in the ordinary course, the result would be contra. As such, and having heard oral argument already, Powers could be awarded reasonable fees for successful prosecution of the motion to strike. Further, because Powers relied on the admissions being deemed admitted in his motion for summary judgment, the Court believes that in the interest of fair play and justice, Powers should receive reasonable expenses, including attorney fees, for preparation and prosecution of said motion for summary judgment. Additionally, pursuant to Rule 37(c), Powers ultimately may be able to apply for reasonable expenses, including attorney's fees, incurred in proving any admissions sought which are proved after a sworn denial unless the Court finds that there were good reasons for denial or that the admissions sought were of no substantial importance. Accordingly, the Department of the Attorney General is ordered to pay Powers reasonable expenses, including reasonable attorney's fees, incurred in relation to the motion to strike and the motion for summary judgment.
The State shall prepare a proposed order which will be settled after notice. Powers' counsel shall submit an affidavit of the above said reasonable expenses for the Court's approval.
[1] Petitioner's Motion is denominated Motion for Summary Judgment. The standard for granting summary disposition under section 6(c) of Title 10 Chapter 9.1 of our general laws is identical to our summary judgment standard. Palmigiano v. State,120 R.I. 402, 406, 387 A.2d 1382, 1385 (1978). Accordingly, the Court will treat this as a motion pursuant to the last mentioned section. A distinction without a difference.
[2] "EVIDENCE NOT WITHHELD:
"1. On August 11, 1981, the two weapons and the one discharged casing found at the scene were delivered by Detective Bessell to Trooper Arnold for testing and returned to Detective Bessell on August 19, 1981.
"2. On March 23, 1982, Detective Bessell retrieved eight (8) shell casings from Kurt Deines which were fired "from the alleged murder weapon prior to altering the firing pins.
"3. On March 24, 1982, Detective Bessell delivered only the eight (8) shells to Trooper Arnold who rendered a report regarding his examination of these eight (8) shells on March 31, 1982 concluding that these shells were all fired from the same weapon but the firing pin impressions were not similar.
"DELIBERATELY WITHHELD EVIDENCE
"4. On March 24, 1982, Detective Bessell did not deliver only the eight (8) shells but also the one (1) discharged cartridge to Trooper Arnold for the specific purpose of determining whether or not they could have been fired from the same weapon. (. . . Note that the notation `resubmitted by Det. Jerome Bessell 3/24/82' with regard to the one (1) shell was missing from Exhibit 5 when this document was originally provided to the defense).
"5. Trooper Arnold's notes of his examination of these eight (8) shells shows a distinctly different firing pin impression (rectangle in shape) which was not mentioned in any reports provided to the defense.
"6. Kurt Deines was brought to Boston by the prosecution some time after March 24, 1982 as a sole result of the fact that the shells did not match, in violation of a sequester order granted by Judge Bourcier on March 15, 1982 (see court file) and Swinehart was contacted by the attorney general's office because the shells did not match." Petitioner's Reply Memorandum, pp. 1-2. (Citations omitted).